718 A.2d 1129

**E.I. du PONT de NEMOURS & CO.**

**v.**

**FORMA–PACK, INC.**

**No. 99, Sept. Term, 1997.**

Court of Appeals of Maryland.

Oct. 8, 1998.

Charles S. Hirsch, Ballard Spahr Andrews & Ingersoll, on brief, Baltimore, for appellant.

John E. McCann, Jr. (Mark D. Gately, Miles & Stockbridge, on brief), Baltimore, for appellee.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

CHASANOW, Judge.

The issue in this case is whether the work product doctrine and/or the attorney-client privilege protects from discovery documents that were transmitted between a creditor corporation's in-house legal department and an outside debt collection agency. To be protected, such documents must have been produced in anticipation of litigation or in rendition of legal services. The Circuit Court for Anne Arundel County rejected both claims of privilege in this case, finding that E.I. du Pont de Nemours & Co. (DuPont) failed to meet its burden of proof as to the existence of any privilege. We affirm the judgment of the trial court denying DuPont's motion for a protective order and hold that neither the work product doctrine nor the attorney-client privilege protects the documents in question from discovery by Forma–Pack, Inc. (Forma–Pack), as they were not produced in anticipation of litigation or in rendition of legal services, but instead were produced for the purely business purpose of debt collection.

## I. BACKGROUND

This appeal arises from an order of the Circuit Court for Anne Arundel County denying a motion for a protective order filed by DuPont. DuPont noted a timely appeal to the Court of Special Appeals, and the order of the circuit court was stayed pending a decision by the intermediate appellate court. We granted certiorari on our own motion prior to consideration by the Court of Special Appeals.

In accordance with Maryland Rule 8–207(a)(2),[1] the parties filed the following agreed statement of the case and facts:

"DuPont and Forma–Pack are parties to a lawsuit pending in the Superior Court for the State of California in and for the County of San Joaquin, entitled *E.I. DuPont, Inc. v. Forma–Pack, Inc.*, Case No. 292630 (filed March 11, 1996)

---

1. Maryland Rule 8–207(a)(2) states: "Statement of case and facts. Within 15 days after the filing of the joint election, the parties shall file with the Clerk four copies of an agreed statement of the case, including the essential facts, as prescribed by Rule 8–413(b). . . . "

(the "California Action"). During the course of discovery in the California Action, Forma–Pack had two deposition subpoenas duces tecum issued by the Circuit Court for Anne Arundel County and served them on R.P. Ehrlich and his employer, Kaplan & Kaplan [ (Kaplan) ]. Forma–Pack sought to take the depositions of, and receive documents from, Mr. Ehrlich and Kaplan & Kaplan in Anne Arundel County. Kaplan & Kaplan is a collection agency which had been retained by DuPont's legal department in November, 1992 to undertake collection efforts against Forma–Pack and ultimately to retain a San Francisco attorney, Stanley Peck, to file the underlying California Action against Forma–Pack seeking collection of the alleged debt.

In response to Forma–Pack's subpoenas, DuPont filed a motion for protective order to prevent the disclosure of communications and documents which it believes are protected by the attorney/client privilege and the work-product doctrine. Forma–Pack opposed DuPont's motion maintaining that the communications between DuPont's attorneys and its collection agents were not protected by either privilege. Both parties filed supplemental memoranda prior to the hearing before the trial court, which occurred on August 7, 1997.

Along with its motion and memorandum, DuPont submitted the affidavits of two DuPont employees which stated that DuPont's legal department did not typically receive delinquent accounts, such as the Forma–Pack account, until after the appropriate DuPont business unit had attempted to collect the account.... Upon receipt of the Forma–Pack account, DuPont's legal department retained Kaplan & Kaplan to assist in the collection of the account and, if necessary, to retain counsel to file suit. The affidavits submitted further stated that once the legal department received the Forma–Pack account, DuPont presumed that litigation might be necessary (which in fact it was) and that all communications with Kaplan & Kaplan were intended to be privileged. The privilege log submitted by DuPont describes the pertinent documents, including two internal

Kaplan & Kaplan documents, as reflecting communications between Kaplan & Kaplan and/or attorneys involved in this litigation or the California Action.

As a result, DuPont argued that the collection of the Forma–Pack account, once it was referred to DuPont's legal department, was a purely legal function, and that communications made in the course of the engagement of Kaplan & Kaplan to aid in its collection efforts w[ere] protected by the attorney/client privilege. DuPont also argued that the documents and communications between its legal department and Kaplan & Kaplan were protected by the work-product doctrine because the communications were made in anticipation of litigation. DuPont also invited the court to conduct an *in camera* inspection of the documents listed on the privilege log.

Forma–Pack disagreed with DuPont's position. Forma–Pack maintained that the attempted collection of the disputed debt in the underlying California Action was a business, not a legal, activity. Forma–Pack pointed out that DuPont's attempts to collect the disputed debt pre-dated the filing of the underlying action by several years. Forma–Pack also submitted the prior deposition testimony of one of DuPont's own affiants, Susan F. Herr, who stated that, "[I]t may have been a business approach on behalf of DuPont in the collection of the debt." Forma–Pack maintained that this business approach to the collection of the debt was directly at issue in the underlying litigation and an area of inquiry to which Forma–Pack is entitled to discovery.

By Memorandum Opinion and Order dated August 13, 1997, the trial court denied DuPont's motion for protective order. The court adopted Forma–Pack's argument[,] ruling that the attorney/client privilege did not apply because the collection of a debt is a business function and not a legal function. The court also ruled that the work-product doctrine did not apply because it believed that the work performed by Kaplan & Kaplan for DuPont was not done with the belief that there was some possibility that litigation might result." (Footnotes and internal citations omitted).

The issues before this Court are set forth in the trial judge's opinion:

> "In bringing this action, Dupont makes two arguments in support of its Motion for a Protective Order. First, Dupont argues that Kaplan is an agent of Dupont's legal department and that any communication between the two is not discoverable under the attorney-client privilege. In addition, Dupont argues that communications between Dupont and Kaplan in their efforts to collect a debt from Forma–Pack are not discoverable under the work-product doctrine. The Court finds these arguments unpersuasive and will deny Plaintiff's Motion for the reasons stated below."

DuPont does not dispute that its arguments were correctly framed by the trial judge. Forma–Pack maintains that the circuit court was correct in finding that the hiring of a collection agency by a creditor corporation constitutes a business approach, not a legal approach, to debt collection and that Kaplan is not DuPont's agent for purposes of litigation. As such, Forma–Pack argues that the communications between DuPont and Kaplan are not shielded from discovery under either the work product doctrine or the attorney-client privilege. We are called upon to decide whether the trial judge was clearly erroneous in finding, after a full evidentiary hearing, that DuPont failed to meet its burden of proof as to the existence of either privilege and thus was not entitled to a protective order based on privilege. While there is no doubt that some of the documents might violate Kaplan's attorney-client privilege, in particular the items pertaining to communications between Kaplan and its own attorney, the communications between Kaplan and DuPont are not privileged for the reasons stated *infra,* and it is only DuPont and not Kaplan that is claiming these privileges. Also important to our holding is that DuPont hired a non-lawyer company to handle the debt collection matter, rather than an attorney or law firm, which leads us to conclude that legal advice and assistance were not DuPont's intent in retaining Kaplan.

## II. ANALYSIS

The current Maryland discovery rules are premised on a philosophy encouraging liberal disclosure. *See Balto. Transit v. Mezzanotti,* 227 Md. 8, 13, 174 A.2d 768, 771 (1961). Indeed, the State's discovery rules are deliberately designed to be broad, comprehensive in scope and liberally construed. *Id.* In *Kelch v. Mass Transit Adm.,* 287 Md. 223, 411 A.2d 449 (1980), this Court stated:

"[A]mong the basic objectives in providing for discovery is 'to require disclosure of facts by a party litigant to all of his adversaries, and thereby to eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that give rise to the litigation.' *Klein v. Weiss,* 284 Md. 36, 55, 395 A.2d 126, 137 (1978). Further, '[i]n order to accomplish the above purposes, the discovery rules are to be liberally construed.' * * * *Baltimore Transit Co. v. Mezzanotti,* 227 Md. 8, 13–14, 174 A.2d 768, 771 (1961)...."

287 Md. at 229–30, 411 A.2d at 453. *See also Rubin v. Weissman,* 59 Md.App. 392, 401, 475 A.2d 1235, 1239 (1984) (noting that "the discovery rules are to be liberally construed") (quoting *Balto. Transit,* 227 Md. at 13, 174 A.2d at 771); *Barnes v. Lednum,* 197 Md. 398, 406, 79 A.2d 520, 524 (1951) (stating that "[m]odern discovery statutes or rules are intended to facilitate discovery").

The main purposes to be served by allowing pretrial discovery of documents are "(i) to acquire accurate and useful information with respect to testimony which is likely to be presented by an opponent, (ii) to obtain information which appears reasonably calculated to lead to the discovery of admissible evidence, and (iii) to use as an aid in cross-examining the opponent's witnesses." *Kelch,* 287 Md. at 231, 411 A.2d at 454.

In administering the discovery rules, trial judges " 'are vested with a reasonable, sound discretion in applying them, which discretion will not be disturbed in the absence of a showing of its abuse.' " *Kelch,* 287 Md. at 229, 411 A.2d at

453 (quoting *Balto. Transit,* 227 Md. at 13–14, 174 A.2d at 771 (footnote omitted)). Moreover, the party who is resisting discovery and is asserting a protective privilege bears the burden of establishing its existence and applicability. *See Maxima v. 6933 Arlington Dev.,* 100 Md.App. 441, 456, 641 A.2d 977, 984 (1994); *In re Criminal Investigation No. 1/242Q,* 326 Md. 1, 11, 602 A.2d 1220, 1225 (1992).

With these principles in mind, particularly as they pertain to Md. Rule 2–402 and Maryland Code (1974, 1995 Repl.Vol.), Courts and Judicial Proceedings Article, 9–108, *infra,* we now turn to our analysis of the work product doctrine and the attorney-client privilege as they pertain to the case before us. As we examine the work product doctrine and the attorney-client privilege, it is helpful to note the following distinctions between the two.

First, while they appear to embrace the same concepts of confidentiality and zealous client advocacy, the work product doctrine is separate and distinct from the attorney-client privilege. *Pratt v. State,* 39 Md.App. 442, 446 n. 2, 387 A.2d 779, 782 n. 2 (1978). The attorney-client privilege as applied in judicial proceedings is narrowly construed, whereas the work product doctrine is broader in scope. *Leonen v. Johns–Manville,* 135 F.R.D. 94, 96 (D.N.J.1990). Indeed, even though it is often referred to as a privilege, the work product doctrine is not a privilege at all, but is "merely a requirement that very good cause be shown if the disclosure is made in the course of a lawyer's preparation of a case." *City of Philadelphia v. Westinghouse Elec. Corp.,* 210 F.Supp. 483, 485 (E.D.Pa.1962). Second, the work product doctrine is "historically and traditionally a privilege of the attorney and not that of the client." *Radiant Burners, Inc. v. American Gas Association,* 207 F.Supp. 771, 776 (N.D.Ill.1962). In contrast, it is the client who is the holder of the attorney-client privilege. *Trupp v. Wolff,* 24 Md.App. 588, 609, 335 A.2d 171, 184 (1975). *See also* 5 LYNN MCLAIN, MARYLAND EVIDENCE § 503.1, at 481–82 (1987)(footnotes omitted).

## A. Work Product Doctrine

The work product doctrine protects from discovery the work of an attorney done in anticipation of litigation or in readiness for trial. *See* Md. Rule 2–402(c). The United States Supreme Court's decision in the seminal case of *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947), has guided the work product doctrine in both the state and federal courts. When confronted with the work product doctrine, courts must balance the need for efficient litigation through liberal disclosure against the attorney's responsibility to be a zealous and protective advocate for his or her client. The *Hickman* Court acknowledged the tension of these competing interests when it stated that "the discovery provisions are to be applied as broadly and liberally as possible ...," *Hickman,* 329 U.S. at 506, 67 S.Ct. at 391, 91 L.Ed. at 460, while also noting that "discovery ... has ultimate and necessary boundaries." 329 U.S. at 507, 67 S.Ct. at 392, 91 L.Ed. at 460.

With the touchstone of the work product doctrine being that the materials must have been created in preparation for trial, the *Hickman* Court also discussed two different types of attorney work product, fact and opinion. Regarding fact work product, the Court stated:

"No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case. Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation. To that end, either party may compel the other to disgorge whatever facts he has in his possession." (Footnote omitted).

*Hickman,* 329 U.S. at 507, 67 S.Ct. at 392, 91 L.Ed. at 460.

In discussing what has come to be called "opinion" work product, the Court stated that the work product doctrine does not

"concern the memoranda, briefs, communications and other writings prepared by counsel for his own use in prosecuting his client's case; and it is equally unrelated to writings

which reflect an attorney's mental impressions, conclusions, opinions or legal theories."

*Hickman,* 329 U.S. at 508, 67 S.Ct. at 392, 91 L.Ed. at 461.

■ Subsequent courts have refined the distinction between fact and opinion work product, with both being generally protected and discoverable only in limited circumstances. *See In re Grand Jury Proceedings,* 33 F.3d 342, 348 (4th Cir. 1994). Fact work product can only be discovered when "substantial need" and "undue hardship" are shown, but opinion work product is almost always completely protected from disclosure. *Id. See also* Md. Rule 2–402(c).

■ The work product doctrine of *Hickman* is codified in Md. Rule 2–402(c):

"*Trial Preparation—Materials.* Subject to the provisions of sections (d) and (e) of this Rule, a party may obtain discovery of documents or other tangible things *prepared in anticipation of litigation or for trial* by or for another party or by or for that other party's representative (including an attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the materials are discoverable under section (a) of this Rule and that *the party seeking discovery has substantial need for the materials in the preparation of the case and is unable without undue hardship to obtain the substantial equivalent of the materials by other means.* In ordering discovery of these materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." (Emphasis added).

Maryland Rule 2–402(c) is almost identical to Federal Rule of Civil Procedure 26(b)(3).[2] *See Shenk v. Berger,* 86 Md.App.

---

2. "**Trial Preparation: Materials.** Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for

498, 502, 587 A.2d 551, 553 (1991)("Maryland looks to corresponding federal rule for guidance in construing similar Maryland rule")(citing *Snowhite v. State, Use of Tennant,* 243 Md. 291, 308, 221 A.2d 342, 352 (1966)). As with *Hickman* and Federal Rule of Civil Procedure 26(b)(3), the standard for determining if a party can use Md. Rule 2–402(c) to shield his or her documents from discovery is whether the materials were prepared "in anticipation of litigation." Determining "whether a document or other tangible thing was 'prepared in anticipation of litigation or for trial' . . . is essentially a question of fact, which, if in dispute, is to be determined by the trial judge following an evidentiary hearing." *Kelch,* 287 Md. at 228, 411 A.2d at 453. *See also Rubin,* 59 Md.App. at 402, 475 A.2d at 1240. In addition, the party claiming the privilege bears the burden " 'to substantiate its non-discovery assertion by a preponderance of the evidence. . . .' " *Kelch,* 287 Md. at 229, 411 A.2d at 453 (quoting Rule 422). If the moving party is successful in its claim, then the party seeking discovery can gain access to the communications by demonstrating "substantial need" and "undue hardship." *See* Md. Rule 2–402(c).

 In determining whether particular materials were prepared in anticipation of litigation, courts examine whether or not they were created in the ordinary course of business. *APL Corp. v. Aetna Cas. & Sur. Co.,* 91 F.R.D. 10, 18 (D.Md.1980). The Advisory Committee notes to the 1970 Amendments to the Federal Rules noted that "materials assembled in the ordinary course of business or for nonlitigation purposes are not under the partial immunity granted by [Rule

---

another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation. . . ."

26] subsection(b)(3)." *Burlington Industries v. Exxon Corporation,* 65 F.R.D. 26, 42 (D.Md.1974). In looking at whether the materials at issue were prepared in anticipation of litigation, the court in *APL* stated:

" 'Courts and commentators have offered a variety of formulas for the necessary nexus between the creation of the material and the prospect of litigation. *See, e.g., Home Insurance Co. v. Ballenger Corp.,* 74 F.R.D. 93, 101 (N.D.Ga.1977) (must be a "substantial probability that litigation will occur and that commencement of such litigation is imminent"); *In re Grand Jury Investigation (Sturgis* ), [412 F.Supp. 943, 948 (E.D.Pa.1976) ] (threat of litigation must be "real and imminent"); *Stix Products, Inc. v. United Merchants & Manufacturers, Inc.,* 47 F.R.D. 334, 337 (S.D.N.Y. 1969) (prospect of litigation must be "identifiable"); 4 Moore's Federal Practice ¶ 26.63(2.–1), at 26–349 (1970) (litigation must "reasonably have been anticipated or apprehended").' "

91 F.R.D. at 15 (quoting *In re Grand Jury Investigation,* 599 F.2d 1224, 1229 (3rd Cir.1979)).

Other jurisdictions have ruled that the communication must have been prepared " 'principally or exclusively to assist in anticipated or ongoing litigation.' " *Sackman v. Liggett Group, Inc.,* 920 F.Supp. 357, 366 (E.D.N.Y.1996) (quoting *Martin v. Valley Nat. Bank of Arizona,* 140 F.R.D. 291, 304 (S.D.N.Y.1991) and *U.S. v. Construction Products Research, Inc.,* 73 F.3d 464, 473 (2d Cir.1996)). *See also Winter Panel Corp. v. Reichhold Chemicals, Inc.,* 124 F.R.D. 511, 515 (D.Mass.1989) (noting there must be a substantial probability of litigation, a mere possibility is not enough); *Diversified Industries, Inc. v. Meredith,* 572 F.2d 596, 604 (8th Cir.1977) (stating the "work product rule does not ... come into play merely because there is a remote prospect of future litigation" (citation omitted)).

According to Wright and Miller, the test of whether documents were prepared in anticipation of litigation is stated as follows:

"Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation. But the converse of this is that *even though litigation is already in prospect, there is no work-product immunity for documents prepared in the regular course of business rather than for purposes of litigation.*" (footnotes omitted) (emphasis added).

8 CHARLES A. WRIGHT, ARTHUR R. MILLER & RICHARD L. MARCUS, FEDERAL PRACTICE AND PROCEDURE § 2024, at 343–46 (1994).

According to the *Leonen* court, the essence of all these various jurisdictions' tests is that for a document to have been prepared in anticipation of litigation, there must have been a particular, identifiable claim or impending litigation. 135 F.R.D. at 97. The court stated: "[T]he mere fact that litigation does eventually occur[ ] does not by itself bring documents within the ambit of the work-product doctrine." *Id.* Accordingly, the court in *Kramer v. Raymond Corp.* declared: "The mere fact that a party finds itself in circumstances that *may lead to litigation,* however, does not render all documents prepared with regard to those circumstances protected work product." Civ. No. 90–5026, 1992 WL 122856, at *3 (E.D.Pa. May 29, 1992)(emphasis added).

In *Griffith v. Davis,* 161 F.R.D. 687 (C.D.Cal.1995), the court found the document in question to have been prepared in the ordinary course of business. 161 F.R.D. at 699. The case involved a discovery request of a memorandum prepared by an IRS agent who was conducting an administrative investigation of a shooting accident. 161 F.R.D. at 690. In finding that the memorandum was properly discoverable, the court stated: "The work product doctrine does not protect materials assembled in the ordinary course of business. Rather, the *primary motivating purpose* behind the creation of the materials must be as an aid in … future litigation." *Griffith,* 161 F.R.D. at 698 (emphasis in original and added). The court

further found that "[b]ecause the memorandum would have been generated whether or not litigation was pending, it does not qualify as attorney work product." *Griffith*, 161 F.R.D. at 699.

Similarly, the court in *United States v. Young* held that documents used to prepare a taxpayer's tax returns were "not covered [by the work product doctrine] because they were not prepared in anticipation of litigation but rather in the ordinary course of business pursuant to public requirements unrelated to litigation." Civil Action No. 6–70198, 1976 WL 1032, at *2 (E.D.Mich., S.D. May 5, 1976).

 As stated *supra*, in the instant case the burden is on DuPont, as the moving party, to establish that the documents are protected from disclosure under the work product doctrine. Once DuPont meets this burden, the burden then shifts to Forma–Pack to demonstrate "substantial need" and "undue hardship." However, there was no need for this second step, since Judge Loney properly found that DuPont failed to meet its burden of showing that the documents in question were prepared in anticipation of litigation rather than in the ordinary course of business. His decision was reached after a full evidentiary hearing, and the fact findings upon which it was based were not clearly erroneous. *See* Md. Rule 8–131(c).[3] In his well-reasoned written decision, the trial judge wrote:

> "In the present case, DuPont argues that the documents created by Kaplan and subpoenaed by Forma–Pack are protected by the work-product doctrine because once a delinquent account, like the Forma–Pack account, is transferred to DuPont's legal department, it is presumed that litigation may be necessary. *The Court finds this argument unpersuasive because debt collection, of the type which*

---

**3.** *"Action tried without a jury.* When an action has been tried without a jury, the appellate court will review the case on both the law and the evidence. It will not set aside the judgment of the trial court on the evidence unless clearly erroneous, and will give due regard to the opportunity of the trial court to judge the credibility of the witnesses."

*Kaplan was engaged in, is a business practice and not a legal practice. The Court does not find that the debt collection procedure conducted by Kaplan on behalf of DuPont can be said to have been done in the belief that there was some possibility that litigation may be the result.* As such, the Court finds that the discovery Forma–Pack seeks is not protected under the work-product doctrine because it is a business approach to debt collection rather than a legal approach used in anticipation of litigation." (Emphasis added).

Judge Loney's conclusion that a business approach to debt collection was used by DuPont in the hiring of Kaplan, rather than a legal approach, is strongly supported by the deposition of Susan F. Herr, the employee in DuPont's legal department responsible for the collection of the Forma–Pack account during the period in which most of the disputed communications were generated. Her deposition included the following:

"[Question:] So we're in mid–1994 up to March of 1996, did you handle the account collection for DuPont?

[Answer:] Yes.

[Question:] Okay. Did you authorize DuPont to commence litigation against Forma–Pack?

[Answer:] In consultation with the business, *it may have been a business approach on behalf of DuPont in the collection of the debt.*" (Emphasis added).

Thus, it is clear from Ms. Herr's deposition that DuPont's own legal department viewed the Forma–Pack collection matter as a business approach, rather than a legal approach taken in anticipation of litigation. As such, any documents generated between Kaplan and DuPont would be materials created in the ordinary course of business and not in anticipation of litigation.

From the foregoing, it is reasonable for Judge Loney to make the factual finding that when DuPont hired a collection agency that was not authorized to practice law instead of an attorney, the primary purpose was to collect a debt and not to litigate the matter. This is especially true in this case, where

the communications between DuPont and Kaplan began three years prior to the initiation of litigation to collect the debt. The role of a collection agency generally is to provide a business alternative for the collection of a debt, not to serve as an agent for purposes of litigation, such as a paralegal or private investigator. Consequently, any communications between the creditor corporation, DuPont, and the collection agency, Kaplan, were properly determined to be not made in anticipation of concrete or imminent litigation, but rather made for the express purpose of avoiding litigation altogether. Moreover, Judge Loney could also conclude that DuPont's legal department was not intending to represent the corporation in any litigation that may arise if Kaplan was unsuccessful in its debt collection efforts. As the record reflects, all the legal department did was forward the matter to Kaplan. DuPont did not even want to be involved in the decision as to what law firm should represent the corporation should litigation ever become necessary.

Consequently, there is no basis for rejecting the factual findings that Kaplan was hired to perform a business function, not a legal function, and that the communications between DuPont and Kaplan were not in anticipation of litigation or for trial. There was nothing clearly erroneous in the decision by the trier of fact that DuPont simply failed to meet its burden of proving, by a preponderance of the evidence, that the work product doctrine shielded the documents in question from discovery by Forma–Pack.

### B. Attorney–Client Privilege

1. *The Privilege in General*

The Supreme Court has recognized the attorney-client privilege as "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States,* 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584, 591 (1981). In Maryland, the privilege has been recognized as a rule of evidence that prevents the disclosure of a confidential communication made by a client to his attorney for the purpose of obtaining legal advice. *Levitsky v. Prince*

*George's Co.,* 50 Md.App. 484, 491, 439 A.2d 600, 604 (1982). In *Harrison v. State,* we essentially adopted Professor Wigmore's definition of the attorney-client privilege:

> " '(1) Where legal advice of [any] kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his insistence permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.' "

276 Md. 122, 135, 345 A.2d 830, 838 (1975) (quoting 8 JOHN H. WIGMORE, WIGMORE ON EVIDENCE § 2292, at 554 (McNaughton rev. ed.1961)(footnote omitted)).

The attorney-client privilege is codified in the Md. Code (1974, 1995 Repl.Vol.), Courts and Judicial Proceedings Art., § 9–108, and states that "[a] person may not be compelled to testify in violation of the attorney-client privilege." The party seeking the protection of the privilege bears the burden of establishing its existence. *Maxima,* 100 Md.App. at 456, 641 A.2d at 984; *In re Criminal Investigation No. 1/242Q,* 326 Md. at 11, 602 A.2d at 1225. Once the attorney-client privilege is invoked, the trial court decides as a matter of law whether the requisite privilege relationship exists, and if it does, "whether or not any such communication is privileged." *Harrison,* 276 Md. at 136, 345 A.2d at 838. Because the application of the attorney-client privilege withholds relevant information from the fact finder, the privilege contains some limitations and should be narrowly construed. *Cf. Morris v. State,* 4 Md.App. 252, 254–55, 242 A.2d 559, 561 (1968). *See also In re Criminal Investigation No. 1/242Q,* 326 Md. at 11, 602 A.2d at 1225 (noting that the privilege is not absolute); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1355 (4th Cir.1984) (noting that the privilege must be strictly construed); *Levitsky,* 50 Md.App. at 494, 439 A.2d at 606 (strict construction of privilege is favored).

The court in *Burlington Industries v. Exxon Corporation* set out the dual requirement for applicability of the attorney-client privilege when it stated: "Only those attorney-

client communications *pertaining to legal assistance* and *made with the intention of confidentiality* are within the ambit of the privilege." 65 F.R.D. at 37 (citation omitted)(emphasis added). In discussing the "legal advice" prong of the attorney-client privilege, the court in *Lanasa v. State,* 109 Md. 602, 71 A. 1058 (1909), stated: "[T]o make the communications privileged, they ... *must relate to professional advice* and to the subject-matter about which such advice is sought." 109 Md. at 617, 71 A. at 1064 (emphasis added). *See also Henson By and Through Mawyer v. Wyeth Laboratories,* 118 F.R.D. 584, 587 (W.D.Va.1987) (quoting *N.C. Elec. Membership Corp. v. Carolina Power,* 110 F.R.D. 511, 514 (M.D.N.C. 1986))("[F]or the privilege to apply, the client's confidential communication 'must be for the *primary* purpose of soliciting legal, rather than business, advice.' "); *Morris,* 4 Md.App. at 255, 242 A.2d at 561 (quoting *Colton v. United States,* 306 F.2d 633, 637, *cert. den.* 371 U.S. 951, 83 S.Ct. 505, 9 L.Ed.2d 499 (1963))("[T]he privilege extends essentially only to the substance of matters communicated to an attorney in professional confidence.").

 Regarding the "confidentiality" prong of the attorney-client privilege for a communication to be confidential, it is essential that it not be intended for disclosure to third persons. *United States v. (Under Seal),* 748 F.2d 871, 874 (4th Cir.1984). The *United States v. (Under Seal)* court held that the attorney-client privilege did not apply to a whole series of corporate documents "because the communications revealed could not reasonably have been expected to remain confidential." 748 F.2d at 877. In examining the items in question, the court stated that several of the documents contained information that "would reasonably be expected to be imparted to a third party." *United States v. (Under Seal),* 748 F.2d at 877–78. The court declared, "if a client communicates information to his attorney with the understanding that the information will be revealed to others, that information ... will not enjoy the privilege." *United States v. (Under Seal),* 748 F.2d at 875. *See also Trupp,* 24 Md.App. at 609, 335 A.2d at 184 (holding that for the attorney-client privilege to apply,

the subject of communication must be confidential and not made in the presence of a third person).

Along with looking at whether the communications between the attorney and the client were intended to be conveyed to a third party, thus destroying confidentiality, courts have also looked at the role of the attorney at the time the communications were made to determine whether they are confidential or not. The *United States v. (Under Seal)* court noted "that the existence of the attorney-client privilege does not alone raise a presumption of confidentiality.... [W]e must look to the services which the attorney has been employed to provide...." 748 F.2d at 875 (citations omitted).

While this Court has not specifically addressed whether collection efforts constitute legal activity, some cases have indicated that the attempted recovery of a debt through a collection agent, even if he or she is an attorney, is a business function and not a legal function. The court in *In re Shapiro* stated: "Where the attorney acts as a business advisor or *collection agent* ... the communications between him and his client are not protected by the privilege." 381 F.Supp. 21, 22 (N.D.Ill.1974) (emphasis added) (footnote omitted). While in the instant case, it is not the attorney (DuPont's legal department) who is acting as a collection agent, but instead Kaplan whom the corporation hired for this purpose, *Shapiro* is illustrative in pointing out that many courts have held that debt collection activities do not fall within the ambit of the attorney-client privilege. *See also In re Witness before the Grand Jury,* 631 F.Supp. 32, 33 (E.D.Wis.1985) and *Young,* Civil Action No. 6–70198, 1976 WL 1032, at *1 (quoting same language from *Shapiro,* 381 F.Supp. at 22). Similarly, *Kelly v. Simon,* 9 A.F.T.R.2d 888 (S.D.Cal.1962), involved an attorney served with summonses to produce certain documents of his clients, who were being investigated by the Internal Revenue Service. 9 A.F.T.R.2d at 889. In finding the documents not privileged, the court stated that "[t]o the extent that respondent was acting as a business manager or rent *collection agent* ... rather than as attorney, no privilege attaches." 9 A.F.T.R.2d at 890 (emphasis added).

## 2. *The Privilege in the Corporate Setting*

As early as 1915, the Supreme Court assumed that the attorney-client privilege applied when the client is a corporation. *United States v. Louis. & Nash. R. R.*, 236 U.S. 318, 35 S.Ct. 363, 59 L.Ed. 598 (1915) (defendant railroad company refused inspection of various documents created by special agents of Interstate Commerce Commission, claiming documents were privileged). *See also* Supreme Court Standard 503(a), relating to the attorney-client privilege, as cited in *Diversified Industries*, 572 F.2d at 605 ("A *'client'* is a person ... or *corporation* ... who is rendered professional legal services by a lawyer, or who consults a lawyer with a view to obtaining professional legal services from him." (Emphasis added)). In the landmark case of *Upjohn, supra,* the Court laid to rest any remaining doubts that a corporation is entitled to claim the attorney-client privilege. Confusion still exists, however, regarding the scope of exactly which employees in a corporation may communicate with corporate counsel, either in-house or out-of-house, and still retain protection under the attorney-client privilege. Over the years, several theories have emerged.

The first case to develop a specific test addressing the scope of protection in the corporate setting was *United States v. United Shoe Machinery Corporation,* 89 F.Supp. 357 (D.Mass. 1950). The court essentially held that a confidential statement to counsel by *any* officer or employee of the corporation might well be privileged. *United Shoe*, 89 F.Supp. at 358–59. This broad theory of privilege in the corporate environment was severely curtailed in *Radiant Burners* in which the court held: "[T]his personal privilege of the client must ... be claimed *only* by natural individuals and not by mere corporate entities." 207 F.Supp. at 773 (emphasis added). The *Radiant Burners* court essentially eliminated the attorney-client privilege for corporations. Later in *Westinghouse Electric, supra,* the "control group test" was created. 210 F.Supp. at 483. Under this test, the attorney-client privilege only protects communications directed to or from employees in the control group, which is comprised of those who play a substantial role

in corporate decision-making. *Westinghouse,* 210 F.Supp. at 485.

The Supreme Court in *Upjohn* rejected the control group test, finding it too narrow in scope in that "it will frequently be employees beyond the control group ... who will possess the information needed by the corporation's lawyers." 449 U.S. at 391, 101 S.Ct. at 683, 66 L.Ed.2d at 592. The Court further stated that the control group test "frustrates the very purpose of the privilege by discouraging the communication of relevant information by employees of the client to attorneys seeking to render legal advice to the client corporation." *Upjohn,* 449 U.S. at 392, 101 S.Ct. at 684, 66 L.Ed.2d at 593. Although the Court deliberately refrained from defining the scope of the attorney-client privilege in the corporate setting, its analysis reflects factors found in the subject-matter test. Amy L. Weiss, *In-house Counsel Beware: Wearing the Business Hat Could Mean Losing the Privilege,* 11 GEO. J. LEGAL ETHICS 393, 396–97 (1998).

The subject-matter test is set forth in *Harper & Row Publishers, Inc. v. Decker* as follows:

"[A]n employee of a corporation, though not a member of its control group, is sufficiently identified with the corporation so that his communication to the corporation's attorney is privileged where the employee makes the communication at the direction of his superiors in the corporation and where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment."

423 F.2d 487, 491–92 (7th Cir.1970).

The Florida Supreme Court recently established a new test to determine the scope of the attorney-client privilege as it applies to corporations. *See Southern Bell Tel. & Tel. Co. v. Deason,* 632 So.2d 1377 (Fla.1994). That court acknowledged that because a corporation can only act through its agents, unlike a natural person, and because a corporation relies much more heavily on its counsel for business advice than an

individual, "it is likely that the 'zone of silence' will be enlarged by virtue of the corporation's continual contact with its legal counsel." *Deason*, 632 So.2d at 1383 (citation omitted). Concerned that a corporation could "conduct its ordinary business through lawyers to hide its affairs from light of day," *Tri–State Equip. v. United States*, 77 A.F.T.R.2d 96–2198, 1996 WL 376340 (E.D.Cal.1996), the *Deason* court attempted to strike a balance between the competing interests of encouraging corporations to seek legal advice so they can best comply with the laws against the real concern of companies using their counsel to prevent discovery. *Deason*, 632 So.2d at 1383. *See also Kelly*, 9 A.F.T.R.2d at 890 ("If documents are not privileged in the hands of a client, the fact that they are turned over to an attorney does not create a privilege.").

The *Deason* court combined the tests established in *Harper & Row* and *Diversified Industries* [4] and arrived at the following criteria as to whether a corporation's communications are protected by the attorney-client privilege:

"(1) [T]he communication would not have been made but for the contemplation of legal services; (2) the employee making the communication did so at the direction of his or her corporate superior; (3) the superior made the request of the employee as part of the corporation's effort to secure legal advice or services; (4) the content of the communication relates to the legal services being rendered, and the subject matter of the communication is within the scope of the employee's duties; [and] (5) the communication is not dis-

---

4. "[T]he attorney-client privilege is applicable to an employee's communication if (1) the communication was made for the purpose of securing legal advice; (2) the employee making the communication did so at the direction of his corporate superior; (3) the superior made the request so that the corporation could secure legal advice; (4) the subject matter of the communication is within the scope of the employee's corporate duties; and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents. We note, moreover, that the corporation has the burden of showing that the communication in issue meets all of the above requirements." *Diversified Industries, Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir.1977).

seminated beyond those persons who, because of the corporate structure, need to know its contents."

*Deason,* 632 So.2d at 1383.

Thus, it is clear that a corporation can be a client for purposes of the attorney-client privilege; what is unclear is exactly how far this protection extends regarding the corporation's employees and agents. While we decline to adopt a particular set of criteria for the application of the privilege in the corporate context until we are required to do so, the communications in the instant case are not protected under any of the tests.

### 3. The Privilege as Applied to This Case

The first step in our analysis is to determine as a threshold issue whether an attorney-client relationship is present in this case. A key element of this determination is whether legal advice was being sought by the client. The second step, once an attorney-client relationship is determined to exist, is to examine whether the communications between the attorney and the client were confidential. For the reasons stated *infra,* there is no need for us to reach this second step in the instant case, as we find that no attorney-client relationship existed.

In clarifying the roles of the parties, we must keep in mind that the attorney is DuPont's in-house legal department, and it is invoking the privilege on behalf of its client, DuPont the corporation. Kaplan is the non-lawyer collection agency that the DuPont legal department hired to collect the Forma–Pack debt, and DuPont is alleging that Kaplan is its agent for purposes of litigation (and that Peck is a subagent). Peck is the attorney that Kaplan, not DuPont, eventually hired to litigate the debt collection matter after Kaplan's efforts proved unsuccessful.[5] A final, critical fact is that Kaplan, the party

---

**5.** As Kaplan is not authorized to practice law, there is no possibility of DuPont's legal department claiming that it is the client and Kaplan is the attorney, via Peck as its subagent, for purposes of establishing the attorney-client privilege.

from whom discovery is being sought by Forma–Pack, is not asserting the attorney-client privilege; only DuPont is asserting the privilege.

We affirm the trial judge's decision that the communications between DuPont and Kaplan are not protected from discovery under the attorney-client privilege, as no attorney-client relationship existed. When DuPont, the corporate client, consulted with its attorney, the legal department, it was not doing so for legal advice regarding the Forma–Pack debt. Instead, the client corporation was simply routing the debt collection matter to its legal department, which in turn was to transmit it to an outside, non-lawyer collection agency. According to Professor Lynn McLain:

"Communications [with in-house counsel] with regard to business advice are unprotected. When the attorney-client privilege is invoked with regard to communications with in-house counsel, the courts will look particularly closely at whether counsel was providing business advice, rather than legal advice or services."

5 LYNN McLAIN, MARYLAND EVIDENCE § 503.9, at 493 (1987)(footnote omitted).

Thus, when DuPont hired Kaplan it was not for the purposes of instituting legal action; instead, DuPont was consulting with Kaplan in a business capacity, for the typical business purpose of collecting a debt. While Kaplan may certainly have been DuPont's agent for the business purpose of collecting the debt, the collection agency was *not* hired as an agent for purposes of litigation. Nor can Kaplan's role be analogized to that of an expert hired to assist with litigation. The case law clearly delineates several roles of the attorney, also applicable to the attorney's agent, that are generally not consistent with the rendering of professional legal advice. When the attorney, or his or her agent, is primarily acting as a collection agent or business advisor or manager, there is no attorney-client relationship because no legal advice is being sought or given. Consequently, there can be no confidential privileged communications between the parties when the at-

torney or his or her agent is acting in one of these non-legal capacities. Thus, because Kaplan was serving as a debt collection agent, in a non-legal capacity, there is no attorney-client privilege claim that DuPont can make to effectively shield the communications from discovery by Forma–Pack. "[C]ommunications are not privileged merely because an individual provides law-related services if the client should have known the person was not authorized to practice law." 2 CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, FEDERAL EVIDENCE § 183, at 311 (2d ed.1994)(footnote omitted).

In focusing on the specific documents at issue, DuPont has not in the trial court nor in its brief on appeal contended that any individual document has some special reason for being privileged beyond the arguments addressed by the trial judge. DuPont chose to make one argument lumping together all of the documents, with no document singled out as having individualized reasons for being privileged not common to the entire class. In essence, DuPont's argument was that all of the documents exchanged between it and Kaplan enjoyed a privilege. In addition, it is only DuPont's and not Kaplan's attorney-client privilege that is being asserted, and the documents conveyed between DuPont and Kaplan are not protected by DuPont's attorney-client privilege because no attorney-client relationship as to DuPont, the legal department, and Kaplan existed. The trial judge properly found that DuPont failed to meet its burden of proving a *prima facie* case that these communications were privileged when he stated, "there was no evidence of communications between Dupont's legal department and Kaplan which would indicate that Dupont intended the communications between itself and Kaplan would be held in confidence."

In sum, Kaplan was hired by DuPont for a business purpose only, to collect a debt. In keeping with this finding, there is nothing clearly erroneous in the trial judge's decision that the attorney-client privilege does not apply to the communications in this case. The judge dealt with the facts presented and the arguments made by counsel, and did so admirably. We agree with Judge Loney when he stated in his written decision that

*"the communication between DuPont and Kaplan is no more than a business approach used in an effort to collect a debt from Forma–Pack.* As such, the Court finds that the communications between DuPont and Kaplan and Kaplan's agents which refer to the attempts made in collecting a debt owed by Forma–Pack are not protected from discovery pursuant to the attorney-client privilege." (Emphasis added).

We might reach an entirely different conclusion if DuPont had initially sent the debt collection matter to an attorney, rather than utilizing a non-lawyer collection agency's services, or if DuPont had intended to litigate the matter itself. However, it is clear from the record that DuPont wanted no part of any litigation effort. Indeed, it was within Kaplan's sole discretion whether to litigate the matter or not. If a private individual sent receivables to a collection agency such as Kaplan, the attorney-client relationship would obviously not apply. DuPont, by using its legal department as a conduit through which to route various communications, should not be given a greater privilege than a private client in a similar situation. Thus, we conclude that a corporation cannot shield materials from discovery, and confer on them the cloak of confidentiality, simply by routing them through its legal counsel. To hold otherwise would greatly restrict the liberal underpinning of our discovery rules, at least as they apply to corporations, and would allow corporate entities to protect virtually all communications from disclosure. Corporations already have vast resources at their disposal with which to defend themselves in litigation, and we see no reason to provide them with an impenetrable shield that would afford them greater protection from discovery than that of an individual client.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the trial court and hold that neither the work product doctrine nor the attorney-client privilege protects the communications between DuPont and Kaplan from discovery by Forma–Pack. Kaplan

was not hired by DuPont's legal department to aid in preparing DuPont's lawsuit against Forma–Pack, nor was it hired as a litigation agent or expert to assist the attorney in providing its client with proper legal advice. Thus, the materials were not produced in anticipation of litigation or in rendition of legal services, but instead were produced for the purely business purpose of debt collection.

**JUDGMENT OF THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

Dissenting Opinion by RAKER, J., in which ELDRIDGE and WILNER, JJ., join.

RAKER, Judge, dissenting.

I would reverse the judgment of the circuit court because I believe the trial judge applied the incorrect standard in determining whether the documents transmitted between Dupont and Kaplan were protected by the attorney-client privilege or the work product doctrine. In my view, the trial judge erroneously applied a *per se* rule that a function performed by a debt collection agent can *never* be a legal function, and thus can never be protected by the attorney-client privilege or the work product doctrine. Accordingly, I would remand the matter to the circuit court to conduct an *in camera* inspection of the documents in accordance with the request made by Dupont to the trial judge, in order to determine whether the attorney-client privilege or the work product doctrine protects the documents.

At the outset, it is important to note the scope of my disagreement with the majority. Our basic dispute is factual, and surrounds the interpretation of the remarks of the trial judge. For that reason, it is important to set out the Memorandum and Order of the trial court.

"The determinative element establishing the cloak of privilege is the presence of a confidential communication emanating from the client." *Levitsky v. Prince George's Co.*, 50 Md.App. 484 [439 A.2d 600] (1982). In *Levitsky*, the Court

of Special Appeals held that "the mere fact the expert may have communicated his opinion of value to either the attorney or client does not make it a privileged communication." *Id.* at 494 [439 A.2d 600] (citing *State Highway Comm. v. Earl,* [82 S.D. 139] 143 N.W.2d 88 ([S.D.] 1966)). In the present case, there was no evidence of communication between DuPont's legal department and Kaplan which would indicate that DuPont intended the communications between itself and Kaplan would be held in confidence. On the contrary, DuPont hired Kaplan in an attempt to collect an outstanding debt owed by Forma–Pack.

*This Court agrees with Forma–Pack when it finds that the function of a collection agent is non-legal in nature and is no more than a business approach designed to collect outstanding debts.* Maryland had no case law directly on point which addresses whether a collection agent's communications with an attorney may be undiscoverable pursuant to the attorney-client privilege. As a result, Forma–Pack cites several cases from other jurisdictions in support of its argument. In particular, Forma–Pack cites *Henson v. Wyeth Laboratories, Inc.,* which states that "for the privilege to apply, the confidential communication must be for the primary purpose of soliciting legal, rather than business advice." *Henson,* 118 F.R.D. 584 (W.D.Va.1987) (citing *North Carolina Elec. Membership Corp. v. Carolina Power,* 110 F.R.D. 511 (M.D.N.C.1986)). In addition, Forma–Pack cites that "where an attorney is acting as a business advisor or collections agent, ... the communication between him and his client are not protected by the privilege." *In re Witness before the Grand Jury,* 631 F.Supp. 32 (E.D.Wis. 1985) (quoting *In re Shapiro,* 381 F.Supp. at 22 (N.D.Ill. 1974)).

*This Court is persuaded by the arguments presented by Forma–Pack in these cases because the Court believes that the communication between DuPont and Kaplan is no more than a business approach used in an effort to collect a debt from Forma–Pack.* As such, the Court finds that the communications between DuPont and Kaplan and Kaplan's

agents which refer to the attempts made in collecting a debt owed by Forma–Pack are not protected from discovery pursuant to the attorney-client privilege.

[DuPont] also argues that the communications between DuPont and Kaplan are protected by the work-product doctrine....

\* \* \* \* \*

DuPont argues that the documents created by Kaplan and subpoenaed by Forma–Pack are protected by the work-product doctrine because once a delinquent account ... is transferred to DuPont's legal department, it is presumed that litigation may be necessary. *The Court finds this argument unpersuasive because debt collection, of the type which Kaplan was engaged in, is a business practice and not a legal practice.*

(Emphasis added).

The majority finds that the trial judge, after a full evidentiary hearing, was not clearly erroneous in finding that DuPont failed to meet its burden of proof as to the existence of any privilege. The majority concludes that "it is reasonable for Judge Loney to make the factual finding that when DuPont hired a collection agency that was not authorized to practice law instead of an attorney, the primary purpose was to collect a debt and not to litigate the matter." Maj. op. at 413, 718 A.2d at 1137. The majority reasons that "there is no basis for rejecting the factual findings that Kaplan was hired to perform a business function, not a legal function, and that the communications between DuPont and Kaplan were not in anticipation of litigation or for trial." Maj. op. at 414, 718 A.2d at 1138.

I do not believe that the trial judge conducted a *full* evidentiary hearing, nor did the judge make the factual findings as set out by the majority. Rather, I believe that the basis for the court's ruling was that debt collection does not constitute legal activity. The only possible support for an argument that the trial court gave individualized consideration to the claims of privilege by DuPont is the trial court's

statement, "[i]n the present case, there was no evidence of communication between DuPont's legal department and Kaplan which would indicate that DuPont intended the communications between itself and Kaplan would be held in confidence." Nonetheless, the circuit court appeared to base its decision on the premise that neither the attorney-client privilege nor the work product doctrine could ever shield documents transmitted between an attorney and a collection agent hired on behalf of a client.

The fairest reading of both the emphasized language and the memorandum opinion as a whole leads to the conclusion that the court applied a *per se* rule that a function performed by a debt collection agent can *never* be a legal function, and thus can never be protected by the attorney-client privilege or work product doctrine. This conclusion is reinforced by the fact that DuPont offered to allow the trial judge to conduct an *in camera* inspection of the disputed documents, but the trial judge declined that request.[1] In applying this *per se* rule, the trial court used the wrong legal standard. Indeed, it appears as though the majority also applies a *per se* standard that the attempted recovery of a debt through a collection agent, even if the agent is an attorney, is a business function and not a legal function. See Maj. op. at 417, 718 A.2d at 1139.[2]

---

1. The privilege log is set out in the Appendix.

2. In support of its argument that debt collection is always primarily a business activity, rather than a legal function, Forma–Pack relies upon *In re Shapiro*, 381 F.Supp. 21 (N.D.Ill.1974). Specifically, Forma–Pack cites the following passage:

 [W]here the attorney acts as a business advisor or collection agent, gives investment advice, or handles financial transactions for his client, the communications between him and his client are not protected by the privilege.

 *Id.* at 22. The majority finds *Shapiro* "illustrative in pointing out that many courts have held that debt collection activities do not fall within the ambit of the attorney-client privilege." Maj. op. at 417, 718 A.2d at 1139. The majority and Forma–Pack read this passage too broadly. *Shapiro* does not state that activity performed by a debt collection agent can *never* be legal activity; rather, the quoted passage merely stands for the unremarkable proposition that activity motivated solely or primarily by a business purpose, rather than to assist the attorney in the rendition

I am mindful that in discovery matters, the trial court has broad discretion which will be disturbed only upon a showing of abuse. This legal discretion, however, does "not include the privilege of incorrect application of law. . . ." *Brown v. Superior Court, Maricopa County,* 137 Ariz. 327, 670 P.2d 725, 730 (1983); *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (noting that a district court abuses its discretion when it makes an error of law).

The record in this case suggests at least one category of documents which might be privileged. Specifically, Kaplan retained an attorney, Stanley Peck, on behalf of DuPont to file the pending court action in the State of California against Forma–Pack. Communications between DuPont and Kaplan, involving that subject, might well be protected by the attorney-client privilege or work product doctrine. *See* 8 WIGMORE, EVIDENCE § 2317, at 619 (McNaughton rev. 1961) ("[T]he attorney's agent is also the client's subagent and is acting as such for the client.") (footnote omitted).

Although not specifically suggested by the record in this case, other categories of information might be entitled to protection as the subject of communications between a debt collection agent and either an attorney or a client. For instance, as previously discussed, a letter from the agent in direct response to a query by the attorney, if made in anticipation of litigation, might be subject to the work product doctrine. Courts have identified other categories of information which might be protected by either the attorney-client privilege or work product doctrine. These categories of information include communications involving: the strength or weakness of a specific claim, *see Spectrum Systems Int'l v. Chemical Bank,* 78 N.Y.2d 371, 575 N.Y.S.2d 809, 581 N.E.2d 1055, 1060 (1991); the value of a legal claim and the fees and expenses that may be incurred in its defense, *see Simon v. G.D. Searle & Co.,* 816 F.2d 397, 406 (8th Cir.1987) (Gibson, J., dissenting), *cert. denied,* 484 U.S. 917, 108 S.Ct. 268, 98

---

of legal services, is not entitled to protection. Such a proposition is consistent with the scope of the common law attorney-client privilege.

.

L.Ed.2d 225 (1987); and, possible legal strategies for a client to adopt, as well as a prediction about the likely outcome of litigation. *See United States v. Adlman,* 134 F.3d 1194, 1195 (2nd Cir.1998). It follows that the trial court erred in concluding that no communication between DuPont and Kaplan could be protected by either the attorney-client privilege or work product doctrine.

In my view, focusing on a facile checklist of "approved" occupations with whom an attorney may safely communicate will not accurately resolve DuPont's claim. of attorney-client privilege. Instead, under the relevant case law,. the proper focus in determining privilege between a lawyer and an agent is on the content and purpose of those communications made during the course of the agency.

Of course, as a threshold matter, the attorney-client privilege applies to an agent only if an agency relationship exists between the attorney and the agent on behalf of the client, or if an agency relationship exists between the client and the agent which involves the attorney. *Rosati v. Kuzman,* 660 A.2d 263, 265 (R.I.1995); *see* McLain, *supra,* § 503.1, at 482 n. 7 (" 'A "representative of the lawyer" is one employed by the lawyer to assist the lawyer in the rendition of professional services.' ") (quoting UNIF. R. EVID. 502(a)(4)). Courts have found an agency relationship to exist "when three elements coalesce: (1) the principal must manifest that the agent will act for him (2) the agent must accept the undertaking and (3) the parties must agree that the principal will be in control of the undertaking." *Rosati,* 660 A.2d at 265. As to the case-specific determination of whether the privilege extends to communications between attorney or client, and the agent hired on behalf of the client, the proper focus is not on the mere existence of an agency relationship or on whether communications passed to or from the agent. *See United States v. (Under Seal),* 748 F.2d 871, 875 (4th Cir.1984), *appeal after remand,* 757 F.2d 600 (4th Cir.1985). The proper focus is whether the purpose of the communications was to aid the attorney in providing legal representation to the client. *See* 3 J. WEINSTEIN & M. BERGER, WEINSTEIN'S FEDERAL EVIDENCE

§ 503.12[4][a], at 503–25 (2nd ed.1998) (recognizing that communications between either agent and client or agent and attorney may be privileged, so long as the purpose of the communication is "to assist the attorney in the attorney's rendition of legal services") (footnote omitted).

Courts have recognized circumstances in which the attorney-client privilege extends to communications between an attorney and an agent hired on behalf of a client. For instance, in *United States v. Kovel*, 296 F.2d 918, 922 (2nd Cir.1961), the United States Court of Appeals for the Second Circuit concluded that information communicated to an accountant, when the accountant had been employed by a law firm to explain a complicated tax scenario, would be protected by the privilege if the information communicated was reasonably related to rendering proper representation. It was clear that such advice aided the attorney in representing the client. Similarly, in *In re Allen*, 106 F.3d 582 (4th Cir.1997), *cert. denied sub nom., McGraw v. Better Gov't Bureau, Inc.*, —— U.S. ——, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998), the court recognized that the attorney-client privilege extended to communications between an attorney and an agent retained to perform the rudimentary task of conducting an initial factual investigation so that the attorney could more effectively " 'sift[ ] through the facts with an eye to the legally relevant.' " *Id.* at 601 (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 390–91, 101 S.Ct. 677, 683, 66 L.Ed.2d 584 (1981)).

In determining whether the work product doctrine extends to litigation materials prepared by a party's agent, the relevant inquiry is whether the party asserting the privilege has demonstrated that the primary purpose for the preparation of the materials was in anticipation of litigation. *Cranford v. Montgomery County*, 300 Md. 759, 791, 481 A.2d 221, 237 (1984); *see United States v. Bornstein*, 977 F.2d 112, 117 (4th Cir.1992); *State ex rel. United Hosp. v. Bedell*, 199 W.Va. 316, 484 S.E.2d 199, 212 (1997). The gravamen of this inquiry focuses upon the "causal relationship between the anticipated litigation and the creation of the document, rather than a requirement that the litigation-causing events have already

occurred." *United States v. Adlman,* 68 F.3d 1495, 1501 (2d Cir.1995). The Supreme Court of Iowa persuasively has observed:

> "Prudent parties anticipate litigation, and begin preparation prior to the time suit is formally commenced. Thus the test should be whether, in the light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation...." [8 C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2024, at 198–99 (1970).] It does not matter that the investigation is routine. Even a routine investigation may be made in anticipation of litigation. Thus a document prepared in the regular course of business may be prepared in anticipation of litigation when the party's business is to prepare for litigation.

*Ashmead v. Harris,* 336 N.W.2d 197, 200 (Iowa 1983) (internal citations partially omitted).

Other courts have identified instances when a function performed by an agent, on behalf of a client, resulted in the creation of materials in anticipation of litigation. For example, a physician's letter was held to be protected work product when the letter was in response to a direct request by an attorney as to the cause of the client's physical ailment. *Sprague v. Office of Workers' Comp.,* 688 F.2d 862, 868–70 (1st Cir.1982). In *United States v. Adlman,* 134 F.3d 1194 (2nd Cir.1998), the United States Court of Appeals for the Second Circuit addressed the protection from discovery of a study, prepared for an attorney, assessing the likely results of a business transaction which, if it occurred, was expected to result in litigation. The court held that the study was protected from discovery if prepared in anticipation of expected litigation. *Id.* at 1195. The Second Circuit reasoned that the study contained the mental impressions of the agent who prepared the study for the attorney:

> [The study] proposed possible legal theories or strategies for [the client] to adopt in response, recommended pre-

ferred methods of structuring the transaction, and made predictions about the likely outcome of litigation.

*Id.* at 1195. The *Adlman* court focused upon the nexus between the anticipated litigation and the creation of the materials; the court also focused upon the protection of the mental impressions of an agent generated in anticipation of litigation for an attorney on behalf of a client.

I would have the trial court apply these principles in determining whether the communications between DuPont and Kaplan are in fact protected by either the attorney-client privilege or work product doctrine. I believe that this is an inquiry for the trial court to make in the first instance. In this regard, I agree with the observation of the Court of Appeals of New York that:

> [W]hether a particular document is or is not protected is necessarily a fact-specific determination, most often requiring in camera review.

*Spectrum Systems Int'l,* 575 N.Y.S.2d 809, 581 N.E.2d at 1060 (internal citation omitted); *see Couser v. State,* 282 Md. 125, 136, 383 A.2d 389, 395 (1978) (noting that whether the work product doctrine protects data included within prosecutor's jury dossier would seem to depend upon the nature and substance of the information), *cert. denied,* 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). In *Upjohn Co. v. United States,* 449 U.S. 383, 397–98, 101 S.Ct. 677, 686, 66 L.Ed.2d 584 (1981), the United States Supreme Court emphasized the importance of a "case-by-case" determination of evidentiary privilege. Other courts similarly have recognized the importance of an individualized assessment of the contents of a relevant document in response to a colorable claim of privilege. *In re Allen,* 106 F.3d 582, 608 (4th Cir.1997), *cert. denied sub nom. McGraw v. Better Gov't Bureau, Inc.,* —— U.S. ——, 118 S.Ct. 689, 139 L.Ed.2d 635 (1998); *In re Sealed Case,* 29 F.3d 715, 718 (D.C.Cir.1994); *United States v. White,* 970 F.2d 328, 334–35 (7th Cir.1992); *Payton v. New Jersey Turnpike Auth.,* 148 N.J. 524, 691 A.2d 321, 335–36 (1997); *State ex rel. United Hosp. v. Bedell,* 199 W.Va. 316, 484 S.E.2d

199, 211 (1997); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 999 (R.I.1988); *accord* J. LYNCH, JR. & R. BOURNE, MODERN MARYLAND CIVIL PROCEDURE § 7.3(b), at 507 (1993); 8 C. WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 2035, at 484–86 (2nd ed.1994).

Had the trial court performed an *in camera* review of the documents as requested by DuPont, the court may well have found that some or all of the documents were privileged. The majority states that "it is clear from Ms. Herr's deposition that DuPont's own legal department viewed the Forma–Pack collection matter as a business approach, rather than a legal approach taken in anticipation of litigation," and concludes that "any documents generated between Kaplan and DuPont would be materials created in the ordinary course of business and not in anticipation of litigation." Maj. op. at 413, 718 A.2d at 1137. The majority views Ms. Herr's deposition in isolation and ignores her affidavit. The affidavit of Ms. Herr, along with that of DuPont legal assistant Glenn Wiltsee, established that the communications with Kaplan & Kaplan were made with the expectation of confidentiality and in anticipation of litigation. Ms. Herr averred, *inter alia*, in her affidavit:

> 4. Once an account is sent to the legal department for collection, it is presumed that litigation may be necessary to collect the debt.

> \* \* \* \* \*

> 8. At all times in dealing with collection agencies such as Kaplan & Kaplan, I expect that all communications between myself or anyone else at Dupont's legal department and the collection agency are confidential since the collection agency assists the legal department in the collection of the account and, if necessary, facilitates the institution of a lawsuit.
> 9. I believed that all communications which I had with Kaplan & Kaplan concerning the Forma–Pack account were confidential.

The affidavit of Glenn Wiltsee was essentially the same as the affidavit of Susan Herr. In addition, the privilege log reveals

that numerous communications were made either to facilitate the filing of the litigation in California or were made after litigation had begun.

In sum, I would hold that the trial court erred in concluding that materials transmitted between a debt collection agent and an attorney or a client can never be protected by the attorney-client privilege and work product doctrine. I emphasize that I do not advocate a holding that any of the documents are in fact protected. I would remand the matter to the Circuit Court for Anne Arundel County for the purpose of conducting an *in camera* inspection of the documents that DuPont claims are protected.[3] *See United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958 (3rd Cir.1988) (remanding for an *in camera* inspection of disputed documents after trial court applied wrong legal standard to claims of privilege).

Finally, I would note that an individual document may contain both privileged and non-privileged subject matter. Under those circumstances, the trial court should order redaction of the privileged information, and permit discovery of the remaining non-privileged contents of the document. *United States v. (Under Seal)*, 748 F.2d at 878.

Accordingly, I respectfully dissent. Judge ELDRIDGE and Judge WILNER have authorized me to state that they join in the views expressed herein.

### APPENDIX

In support of its claims of attorney-client privilege and work product doctrine, DuPont introduced the following privilege log:

---

**3.** An *in camera* inspection is not required of every document in every case in which a colorable claim of privilege has been raised. Ordinarily, such decisions are within the sound discretion of the trial court. Whereas here, however, when a party has established a *prima facie* claim of privilege, based in part on a sufficiently detailed privilege log, and the materials for which the claims of privilege are made are relatively few in number, an *in camera* inspection by the trial court would not be unduly burdensome. As reflected in the privilege log reproduced in the Appendix, DuPont's claims of privilege extended only to sixteen documents, generally one or two pages in length.

| | |
|---|---|
| Document Description | Letter from Rodney S. Bonds to Charles Hirsch dated May 29, 1997 |
| Identity and Position of Author | Rodney S. Bonds, Manager, Kaplan & Kaplan, Inc., Manager Legal Dept. |
| Identity and Position of Recipients | DuPont attorney Mr. Charles Hirsch, Ballard, Spahr, Andrews & Ingersoll |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–1**

| | |
|---|---|
| Document Description | Computer record |
| Identity and Position of Author | Kaplan & Kaplan Internal |
| Identity and Position of Recipients | Internal |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–2**

| | |
|---|---|
| Document Description | Facsimile from Bonds to Hirsch dated 5/8/97 |
| Identity and Position of Author | Rodney S. Bonds, Manager, Kaplan & Kaplan, Manager Legal Department |
| Identity and Position of Recipients | DuPont attorney Mr. Charles Hirsch, Ballard, Spahr, Andrews & Ingersoll |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–3**

| | |
|---|---|
| Document Description | Letter from Edward J. Friedman to Mr. Rodney Bonds dated April 22, 1997 |
| Identity and Position of Author | Kaplan & Kaplan attorney Edward J. Friedman, Weinstock, Stevan, Harris & Friedman, P.A. |
| Identity and Position of Recipients | Mr. Rodney Bonds, Kaplan & Kaplan, Manager Legal Dept. |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–4**

| | |
|---|---|
| Document Description | Letter from Edward J. Friedman to Mr. Rodney Bonds dated April 16, 1997 |
| Identity and Position of Author | Kaplan & Kaplan attorney Edward J. Friedman, Weinstock, Stevan, Harris & Friedman, P.A. |
| Identity and Position of Recipients | Mr. Rodney Bonds, Kaplan & Kaplan, Manager Legal Dept. |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–5**

| | |
|---|---|
| Document Description | Letter from Brian L. Cella to Kaplan & Kaplan dated March 21, 1997 |
| Identity and Position of Author | DuPont attorney, Brian L. Cella, Glynn, Cella & Lange |
| Identity and Position of Recipients | Kaplan & Kaplan |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–6**

| | |
|---|---|
| Document Description | Facsimile from Rodney Bonds to Bob Lange dated February 14, 1997 |
| Identity and Position of Author | Rodney Bonds, Kaplan & Kaplan, Manager Legal Dept. |
| Identity and Position of Recipients | DuPont attorney Robert J. Lange, Esq., Glynn, Cella & Lange |
| Privilege Claimed | Attorney Client Privilege/Work Product |

**Exhibit A–7**
Document Description Letter from Robert J. Lange to Mr. Rodney
 Bonds dated February 4, 1997
Identity and Position of Author DuPont attorney Robert J. Lange, Glynn,
 Cella & Lange
Identity and Position of Recipients Rodney Bonds, Kaplan & Kaplan, Manager
 Legal Dept.
Privilege Claimed Attorney Client Privilege/Work Product

**Exhibit A–8**
Document Description Facsimile from Jim Mullins to DuPont
 Legal dated June 19, 1996
Identity and Position of Author Jim Mullins, Kaplan & Kaplan, Legal
 Representative
Identity and Position of Recipients Faye Vaughn, DuPont Legal
Privilege Claimed Attorney–Client Privilege/Work Product

**Exhibit A–9**
Document Description Letter from Stanley Peck addressed to Jim
 Mullins dated June 19, 1996
Identity and Position of Author DuPont attorney Stanley Peck
Identity and Position of Recipients Jim Mullins, Kaplan & Kaplan, Legal
 Representative
Privilege Claimed Attorney–Client Privilege/Work Product

**Exhibit A–10**
Document Description Letter from Jim Mullins to Susan Herr
 dated March 23, 1996 forwarding DuPont
 Counsel Stanley Peck Progress Report of
 3/15/96
Identity and Position of Author Jim Mullins, Kaplan & Kaplan, Legal
 Representative, Stanley Peck, DuPont
 counsel
Identity and Position of Recipients Ms. Susan Herr, DuPont Legal
Privilege Claimed Attorney–Client Privilege/Work Product

**Exhibit A–11**
Document Description Letter from Jim Mullins to Stanley Peck
 dated February 22, 1996
Identity and Position of Author Jim Mullins, Kaplan & Kaplan, Legal
 Representative
Identity and Position of Recipients DuPont attorney Stanley Peck
Privilege Claimed Attorney Client Privilege/Work Product

**Exhibit A–12**
Document Description Letter from Stanley Peck to Jim Mullins
 dated May 31, 1996
Identity and Position of Author DuPont attorney Stanley Peck
Identity and Position of Recipients Jim Mullins, Kaplan & Kaplan, Legal
 Representative
Privilege Claimed Attorney Client Privilege/Work Product

**Exhibit A–13**
Document Description Letter from Jim Mullins to Stanley Peck
 dated September 27, 1995
Identity and Position of Author Jim Mullins, Kaplan & Kaplan, Legal
 Representative
Identity and Position of Recipients DuPont attorney Stanley Peck
Privilege Claimed Attorney Client Privilege/Work Product

**Exhibit A–14**
Document Description

Memo from Jim Mullins to Susan Herr dated June 23, 1995 attaching 6/14/95, 9/23/95 correspondence from DuPont attorney Stanley Peck and 8/29/94 collection ' letter to Forma–Pack

Identity and Position of Author

Jim Mullins, Kaplan & Kaplan, Legal Representative, DuPont attorney Stanley Peck

Identity and Position of Recipients

Susan Herr, DuPont Legal

Privilege Claimed

Attorney Client Privilege/Work Product

**Exhibit A–15**
Document Description

8/94 Internal Kaplan & Kaplan "Request for Legal Action Form"

Identity and Position of Author

Kaplan & Kaplan

Identity and Position of Recipients

Internal

Privilege Claimed

Attorney Client Privilege/Work Product