*In the Matter of the Honorable Pamela J. White*, Misc. No. 5, September Term, 2016, Opinion by Adkins, J.

**JUDGES — REMOVAL OR DISCIPLINE — REPRIMAND — PROCEEDINGS AND REVIEW — MANDAMUS — MARYLAND RULE 18-404(j)(4):** Maryland Rule 18-404(j)(4) requires the Maryland Commission on Judicial Disabilities ("Commission") to "promptly" transmit a copy of the report and recommendation from the Judicial Inquiry Board ("Inquiry Board") to a judge. The judge then has an opportunity to file objections prior to the Commission's probable cause determination. The Commission violated Md. Rule 18-404(j)(4) when it failed to provide a judge with a copy of the Inquiry Board's report prior to making a probable cause determination. The Commission, however, cured this rule violation by allowing the judge to file a response to the Inquiry Board's report before a subsequent reevaluation of probable cause.

**JUDGES — REMOVAL OR DISCIPLINE — REPRIMAND — PROCEEDINGS AND REVIEW — MANDAMUS — DISCOVERY:** Maryland Rule 18-407(g)(3) provides for the application of the civil discovery rules to judicial discipline proceedings. The Commission improperly struck the entirety of a judge's discovery requests when it ruled that Investigative Counsel was not a "party" to judicial discipline proceedings. Despite this improper discovery limitation, sweeping open-file discovery in judicial discipline proceedings allowed the judge to understand the nature of the charges against her. Therefore, the judge had adequate information to prepare for her evidentiary hearing before the Commission.

**JUDGES — REMOVAL OR DISCIPLINE — REPRIMAND — PROCEEDINGS AND REVIEW — MANDAMUS — FAIRNESS OF PROCEEDINGS:** According to the Maryland Constitution and our Rules "an accused judge is entitled to these elements of procedural due process—notice, an opportunity to respond, [and] a fair hearing . . . ." *Matter of White*, 451 Md. 630, 648 (2017) (per curiam). The Commission's procedures, even after accounting for the improper withholding of the Inquiry Board's report and an improper discovery ruling, did not deny a judge notice, an opportunity to respond, and a fair hearing.

Maryland Commission on Judicial Disabilities
Case No.: CJD2014-114
Argued: November 4, 2016
Reargued: January 9, 2018

IN THE COURT OF APPEALS

OF MARYLAND

Misc. No. 5

September Term, 2016

IN THE MATTER OF THE

HONORABLE PAMELA J. WHITE

Barbera, C.J.
Greene
Adkins
McDonald
Hotten
Getty
Harrell, Glenn T., Jr.,
　　(Senior Judge, Specially Assigned)

JJ.

Opinion by Adkins, J.

Filed: March 27, 2018

We must decide whether proceedings before the Maryland Commission on Judicial Disabilities ("Commission") violated a judge's due process rights. As we explained last year, although we have no **appellate** jurisdiction to review a judge's exceptions to the Commission's determination to issue a public reprimand after public charges and a contested hearing, the common law writ of mandamus provides an avenue for a judge to challenge the fundamental fairness of the proceedings before the Commission. *Matter of White*, 451 Md. 630, 649–50 (2017) (per curiam) [hereinafter *White I*]. We previously refrained from deciding the due process claims made by Petitioner, Judge Pamela J. White, because we did not have the full record of the Commission proceedings before us. *Id.* at 652–53. After review of the complete record, we hold that, although the Commission violated applicable Maryland Rules, these violations did not ultimately deprive Judge White of a fundamentally fair proceeding.

## BACKGROUND

### Discipline Or Removal Of Judges

Article IV, §§ 4A–4B of the Maryland Constitution provides a special process for the discipline or removal of a judge who has committed misconduct, or who is found to suffer from a disability. Article IV, § 4A(a) creates the Commission, and Article IV, § 4B(a)(1) authorizes it to conduct investigations of complaints about judges. At the conclusion of the investigation, the Commission may "issue a reprimand and [has] the power to recommend to the Court of Appeals the removal, censure, or other appropriate disciplining of a judge or, in an appropriate case, retirement." *Id.*, § 4B(a)(2). Commission proceedings are confidential and privileged, except as provided by rule of this Court. *Id.*,

§ 4B(a)(3). The General Assembly granted the Commission additional powers relating to investigations and hearings. *See* Md. Code (1973, 2013 Repl. Vol.), §§ 13-401–13-403 of the Courts and Judicial Proceedings Article (power to issue and enforce subpoenas, administer oaths or affirmations, and grant immunity to witnesses).

The Constitution also delegates to this Court the task of prescribing "the means to implement and enforce the powers of the Commission and the practice and procedure before the Commission." Md. Const. art. IV, § 4B(a)(5). We have done so in the Maryland Rules at 18-401 *et seq.*[1]

Maryland Rule 18-402(d) empowers the Commission to appoint an Investigative Counsel. Upon submission of a complaint to the Commission, Investigative Counsel may dismiss the complaint if "the complaint does not allege facts that, if true, would constitute a disability or sanctionable conduct and that there are no reasonable grounds for a preliminary investigation . . . ." Md. Rule 18-404(c). If Investigative Counsel does not dismiss the complaint, she then conducts a preliminary investigation of the alleged misconduct. *Id.* (d). Unless the Commission or the Judicial Inquiry Board ("Inquiry Board") (discussed *infra*) directs otherwise, Investigative Counsel shall notify the judge of

---

[1] As we explained in *Matter of White*, 451 Md. 630, 636 n.3 (2017) (per curiam) [hereinafter *White I*], when the investigation in this case commenced and during most of the Maryland Commission on Judicial Disabilities' proceedings, these Rules were codified at Maryland Rule 16-801 *et seq.* During the pendency of this case, the Rules were recodified in the current form effective July 1, 2016. Rules Order (June 6, 2016), http://mdcourts.gov/rules/rodocs/178troparts1x2x3.pdf (https://perma.cc/3LYM-YPJN). Unless stated otherwise, we shall refer to the Rules by their current codification.

the pendency of the investigation before its conclusion.[2] *Id.* (e)(4). Investigative Counsel must "afford the judge a reasonable opportunity to present, in person or in writing, such information as the judge chooses." *Id.* (e)(5). Investigative Counsel has 90 days to complete her preliminary investigation. *Id.* (e)(6). Upon application by Investigative Counsel, and for good cause, the Inquiry Board shall extend the time for completing the preliminary investigation for an additional 30-day period. *Id.* The Commission may dismiss the complaint and terminate an investigation if Investigative Counsel fails to comply with these time requirements. *Id.*

Maryland Rule 18-403(a) requires the Commission to "appoint an [Inquiry] Board consisting of two judges, two attorneys, and three public members who are not attorneys or judges." After completing a preliminary investigation, Investigative Counsel shall report the results of her investigation to the Inquiry Board with a recommendation of either: (1) dismissal; (2) authorization of further investigation; (3) entering into a private reprimand or deferred discipline agreement; or (4) filing public charges. Md. Rule 18-

---

[2] Md. Rule 18-404(e)(4) requires Investigative Counsel to notify the judge:

> (A) that Investigative Counsel has undertaken a preliminary investigation into whether the judge has a disability or has committed sanctionable conduct; (B) whether the preliminary investigation was undertaken on Investigative Counsel's initiative or on a complaint; (C) if the investigation was undertaken on a complaint, of the name of the person who filed the complaint and the contents of the complaint; (D) of the nature of the disability or sanctionable conduct under investigation; and (E) of the judge's rights under subsection (e)(5) of this Rule.

3

404(f). The Inquiry Board must continually monitor the investigation and review the reports and recommendations of Investigative Counsel. *Id.* (g).

Upon reviewing the results of the preliminary investigation, the Inquiry Board prepares a report for submission to the Commission. *Id.* (j)(1). The report must include a recommendation for further action by the Commission. The Inquiry Board may not recommend a dismissal with warning, a private reprimand, or a deferred discipline agreement unless the respondent judge consents to the remedy. *Id.* After the Commission receives the Inquiry Board's report, it must promptly transmit a copy to the judge and Investigative Counsel. *Id.* (j)(4). Both Investigative Counsel and the judge have an opportunity to file objections to the Inquiry Board's report. *Id.* (k).

After reviewing the Inquiry Board's report and upon a finding of probable cause, the Commission may direct Investigative Counsel to begin proceedings against the judge by filing charges with the Commission. Md. Rule 18-407(a). The judge may then file a response to the charges. *Id.* (c). The Commission must also notify the judge of the date, time, and place of a hearing on the charges. *Id.* (d).

Following the filing of charges, the respondent judge has several procedural rights expressly recognized by the Rules:

> The judge has the right to inspect and copy the Commission Record, to a prompt hearing on the charges, to be represented by an attorney, to the issuance of subpoenas for the attendance of witnesses and for the production of designated documents and other tangible things, to present evidence and argument, and to examine and cross-examine witnesses.

4

*Id.* at (f). The Rules also provide that prehearing discovery is "governed by Title 2, Chapter 400 of these Rules,[3] except that the Chair of the Commission, rather than the court, may limit the scope of discovery, enter protective orders permitted by Rule 2-403, and resolve other discovery issues." *Id.* (g)(3). At the hearing, the rules of evidence apply. *Id.* (i)(5).

If the Commission finds clear and convincing evidence that the judge has committed sanctionable conduct, "it shall either issue a public reprimand for the sanctionable conduct or refer the matter to the Court of Appeals . . . ." *Id.* (j). If it finds otherwise, the Commission will dismiss the charges and terminate the proceedings. *Id.*

### *Joyner v. Veolia Transp. Servs. Inc.*

Since 2007, Judge Pamela J. White (whom we shall sometimes refer to as "Respondent")[4] has served as an Associate Judge of the Circuit Court for Baltimore City. She also served as the Supervising Judge for the Circuit Court's Civil Alternative Dispute Resolution Program ("ADR") from 2009 until 2015. In 2014, Respondent presided over hearings in a civil matter. *Louise V. Joyner v. Veolia Transp. Servs. Inc., et al.*, Case No. 24-C-014000589 (Baltimore City Circuit Court). Attorney Rickey Nelson Jones

---

[3] Title 2, Chapter 400 of the Maryland Rules provides discovery procedures for civil cases.

[4] Judge White is the Petitioner here, but was the Respondent in the proceedings before the Maryland Commission on Judicial Disabilities. We refer to her as Respondent here for ease of understanding.

represented the plaintiff, Joyner, in her action for negligence while attorney Andrew Stephenson represented the defendant, Veolia.[5]

Early in the litigation, Veolia moved to dismiss Joyner's punitive damages claim. When counsel for both parties appeared before Judge White for a hearing on the motion to dismiss, Jones tried to justify his claim for punitive damages, which stemmed from the phone calls made by an insurance adjuster to the plaintiff following the accident. Dissatisfied with Jones's attempted explanation, Judge White said:

> **The Court:** Oh Mr. Jones, are you telling me this with a straight face? . . . . Are you telling me as an officer of the court, admitted to the bar, with a straight face, that you think you have an ill-will punitive damages claim against Veolia Transportation because of something that an insurance adjuster, employed by an insurance company, has said in the course of calling your client to inquire of her status? . . . . Do you think this allegation can stand, in the face of your responsibility as an officer of the court?
>
> **Jones:** Do I believe that a representative of the defendant can act on their behalf, I do believe they can act on their behalf. If you're asking me do I believe another corporation—
>
> **The Court:** I'm asking you, is there any conceivable case authority, any statutory authority, that allows you the chutzpah to claim punitive damages in a negligence case suggesting that a claims adjuster working for an insurance company asking questions of your client about the status her injury should be attributed as an ill-will punitive damages claim by Veolia Transportation?
>
> **Jones:** I have no case law on that, Your Honor.

---

[5] Veolia Transportation Services operates mobility vehicles for the Maryland Transit Administration. Louise Joyner sued Veolia for negligence after she was injured when attempting to enter a mobility van.

After this exchange, Respondent granted Veolia's motion and dismissed the punitive damages claim with prejudice.

The pretrial scheduling order for *Joyner* required that "all counsel, their clients and insurance representatives must attend the pretrial conference in person," on September 17, 2014, before another judge of the court (not Judge White). The order also directed that "[a]ny request for accommodation under the Americans with Disabilities Act should be directed to the Administrative Office of the Circuit Court for Baltimore City," and provided a phone number to contact that office. Finally, the order permitted modification "only upon a written motion for modification setting forth a showing of good cause that the schedule cannot reasonably be met despite the diligence of the parties seeking modification." On September 5, 2014, Jones filed a pretrial conference statement in which, under the heading "Other Matters," he wrote "Plaintiff requests that her attorney attend the Pretrial Conference alone due to her poor health and doctor recommendation that she not travel without ambulance assistance." (Emphasis in original). Joyner did not attend the pretrial conference.

After the pretrial conference, Jeff Trueman, then the Deputy Director of the Circuit Court's Civil ADR program, advised Judge White of Joyner's unexcused absence at the conference. Judge White issued a show cause order requiring Joyner and Jones to appear at the Circuit Court on October 31, 2014, and explain why the Court should not hold them in civil contempt. In his response to the order, Jones contended that his proffer in the pretrial conference statement sufficed as the written "motion" required for modification of the pretrial scheduling order. Jones also included, in a postscript to his letter response that

7

was not sent to opposing counsel, an offer to speak to Judge White about the postponement. Judge White immediately responded in writing that trial would go forward.

The next day, October 15, 2014, Jones and opposing counsel appeared before Judge White for trial. Jones requested a postponement and presented a motion for Judge White's recusal. He alleged three "partial" acts by Respondent. First, he argued that the Judge insulted him by "questioning his bar membership" during the May 5, 2014 hearing. Second, he alleged that Respondent incorrectly issued the show cause order. Finally, he contended that Respondent was not impartial because she had directed him to Postponement Court. Responding to the recusal motion in open court, Judge White recused herself and said the following:

> [B]ecause I am incredulous, because I am in disbelief, because I find myself incapable of believing virtually anything that Mr. Jones has just told me, I'm in the unfamiliar territory of finding that I must recuse myself from any further proceedings in this case because I cannot believe anything that the Reverend Rickey Nelson Jones[,] Esquire[6]—and I'm reading off the letterhead—tells me.
>
> I think that 99% of what Mr. Jones has told me about his conduct on behalf of his client is pure bullshit[.] So I'm forced to recuse myself and I can't get past the idea that I cannot believe a darn thing that Mr. Jones tells me now.
>
> So I am compelled under . . . Rule 2.11 [of the Maryland Code of Judicial Conduct][7] to disqualify myself in any further

---

[6] Jones used the honorific title "reverend" in his office letterhead.

[7] Judge White presumably referred to then Rule 2.11 of the Maryland Code of Judicial Conduct ("MCJC"), which provides in pertinent part:

8

proceedings in this case, because I now believe, based on Mr. Jones' conduct and representations in this case, in his discussion and exploration of "who struck John" in recent days about his request for accommodation, all without following the precise instructions and procedures in the Scheduling Order and the website and resources available to him.

I find that I cannot be impartial. I am personally biased or prejudiced concerning Mr. Jones and his conduct. So, I'm going to recuse myself.

Regarding the request for postponement, Judge White raised her voice and admonished Jones for offering to engage in *ex parte* communication with the Court. She then added:

I am dumbfounded at your irresponsible behavior, Mr. Jones. All the more reason I am compelled by your dumbfounding behavior to recuse myself because I cannot believe a single word you say. And what I am compelled to do now because the Rules of Professional Conduct and the Judicial Code compel me to do so is to reexamine what I just said and heard and reported on the record whether I must report you to the Attorney Grievance Commission.

\*\*\*\*

In addition to not believing a word that Mr. Jones tells me, I am so very frustrated with his failure to attend to the basic rules of procedure.

---

(a) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including the following circumstances:

(1) The judge has a personal bias or prejudice concerning a party or a party's attorney, or personal knowledge of facts that are in dispute in the proceeding.

Md. Rule 18-102.11.

9

At the conclusion of the hearing, Judge White issued a written order explaining her recusal from *Joyner*.[8]

At the hearing on the show cause order, Jones attempted to explain why his client could not come to court without an ambulance. Judge White acknowledged the plaintiff's status and inquired as to how Jones felt he had complied with the pretrial scheduling order. Jones presumed that his warning that he would attend without his client, made in his pretrial conference statement, sufficed as a "motion" to modify the scheduling order. After some discussion, Judge White held Jones in contempt of Court.[9]

---

[8] Judge White explained that she did not know whether her recusal from *Louise V. Joyner v. Veolia Transp. Servs. Inc., et al.*, Case No. 24-C-014000589 (Baltimore City Circuit Court), would also require her recusal from future cases involving Jones:

> While I am shocked, frustrated, appalled and consequently don't believe anything Mr. Jones has told me about the conduct of his office and himself in this case and I don't believe that he's honored the Court's Orders in this case, I don't understand or believe that necessarily will carry over to any future other cases. I will take each case as it comes.
>
> We do have a date. I am not recusing myself from a Show Cause hearing on October the 3lst. It is my responsibility to address the Show Cause hearing on October 31st and I will address that Motion. It's not a Motion. You responded to the Show Cause Order. I'll address that in due course. I haven't seen your Answer, Mr. Jones, and I'll address it in due course.

[9] She explained:

> The suggestion by Mr. Jones that the request made in the last paragraph of the pretrial statement that he submitted on September 5th as complying in any way, shape or form with the Scheduling Order or with the mandate of Rule 2–311 is shocking and is soundly and roundly rejected by this Court as

## Proceedings Before The Inquiry Board

Five days after Judge White recused herself from *Joyner*, the Commission received Jones's first complaint regarding her.[10] He complained of Respondent's comments and conduct during the hearings on Veolia's motion to dismiss, and on his motion to recuse. He also averred that, although Judge White had recognized she could not be impartial, she refused to recuse herself from the hearing on her show cause order. After receiving Jones's first complaint, the Commission's Investigative Counsel, then Carol A. Crawford, opened a preliminary investigation into Respondent's conduct.

On November 17, 2014, the Commission received Jones's second complaint against Judge White. Jones based this complaint on Respondent's conduct during the October 31 hearing. He also alleged that Judge White improperly decided not to recuse herself from considering the show cause order.

---

reflecting (A) any diligent effort on the part of Mr. Jones; (B) any good cause effort by Mr. Jones on behalf of his client, either to comply with the Scheduling Order, to conform to the Rules or otherwise show respect for the process and procedures of this Court.

The utter absence of respect by Mr. Jones to the procedures and process of this Court are disappointing at least, contemptuous at worst.

[10] Shortly after our decision in *White I*, and pursuant to Md. Rule 18-409(b)(1), Judge White submitted a waiver of confidentiality regarding the Commission record. Accordingly, we shall discuss the normally confidential investigation process employed by Investigative Counsel and the Inquiry Board.

The Inquiry Board extended the time to complete the preliminary investigation and delayed giving notice to Judge White, for "good cause shown," in January, February, and April. In April, Investigative Counsel sent a letter notifying Judge White of the two complaints.[11]

Judge White timely responded to Jones's first two complaints, asserting that her demeanor toward Jones was appropriate because he showed no concern for the rules of procedure or proper professional behavior. She also averred that she properly presided over the show cause proceedings because Maryland Code of Judicial Conduct ("MJCJ") Rule 2.11 did not require her recusal.

The following day, Investigative Counsel submitted a memorandum to the Inquiry Board recommending that the Inquiry Board find that Judge White committed sanctionable conduct "with regard to her demeanor throughout the [*Joyner*] proceedings," and by failing to recuse herself from the October 31 hearing. Investigative Counsel recommended that the Inquiry Board, in turn, recommend to the Commission, that a private reprimand be issued. The memorandum attached copies of Jones's complaints, audio recordings of the hearings, and Respondent's response to the complaints. On December 11, 2015, the Inquiry Board forwarded its report and recommendation to the Commission, but no copy was sent to Respondent.

---

[11] On May 4, 2015, Jones appeared before Judge White for a hearing on the contempt charge, which Jones had not yet purged. At the hearing, Respondent explained that she had received notice that Jones had filed complaints with the Commission. She then instructed Jones that she would not make any further decision regarding the finding of contempt in light of his complaints.

12

**Proceedings Before The Commission**

At its December 2015 meeting, the Commission reviewed the complaints, recordings of the hearings, Judge White's correspondence with Investigative Counsel, and the recommendations of the Inquiry Board and Investigative Counsel. The Commission concluded that probable cause existed to believe that Respondent had committed sanctionable conduct and, by unanimous vote, directed Investigative Counsel to initiate proceedings against Respondent by filing public charges.

It was only when Judge White was notified of this action that her counsel requested, and finally received on January 12, 2016, a copy of the Inquiry Board's report. In a 40-page filing, Respondent objected to the report and argued that her conduct in *Joyner* did not amount to misconduct, and requested a hearing before the Commission. At its February 2016 meeting, the Commission voted to set the matter for further discussion at a special meeting.

That special meeting was held on March 2, 2016. But the Commission rejected Respondent's objections to the Inquiry Board's report, denied her request for a hearing,[12] and again directed Investigative Counsel to file charges.

The Commission filed public charges against Judge White on March 31, 2016, alleging that she violated several provisions of the Code of Judicial Conduct, specifically

---

[12] The Rules do not oblige the Commission to hold a pre-charging hearing.

13

MCJC 1.1 (Compliance with the Law),[13] 1.2 (Promoting Confidence in the Judiciary),[14]

2.2 (Impartiality and Fairness),[15] 2.3 (Bias, Prejudice, and Harassment),[16] 2.11

---

[13] MCJC 1.1 provides: "A judge shall comply with the law, including this Code of Judicial Conduct." Md. Rule 18-101.1.

[14] MCJC 1.2 provides:

(a) Promoting Public Confidence. A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary.

(b) Avoiding Perception of Impropriety. A judge shall avoid conduct that would create in reasonable minds a perception of impropriety.

Md. Rule 18-101.2.

[15] MCJC 2.2 provides:

(a) A judge shall uphold and apply the law and shall perform all duties of judicial office impartially and fairly.

(b) A judge may make reasonable efforts, consistent with the Maryland Rules and other law, to facilitate the ability of all litigants, including self-represented litigants, to be fairly heard.

Md. Rule 18-102.2.

[16] MCJC 2.3 provides:

(a) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice.

(b) In the performance of judicial duties, a judge shall not, by words or conduct, manifest bias, prejudice, or harassment based upon race, sex, gender, religion, national origin, ethnicity, disability, age, sexual orientation, marital status, socioeconomic status, or political affiliation. A judge shall require attorneys in proceedings before the court, court staff,

(Disqualification).[17] In her answer, Respondent moved to dismiss the charges. She argued that her decisions in *Joyner* were legal judgments not subject to scrutiny through the disciplinary process and that, even if the Commission had the authority to review her actions, she did not commit misconduct. Respondent also alleged a due process violation after Investigative Counsel failed to comply with certain time standards, did not inform her of Jones's complaints in a timely fashion, and failed to convey information about the proceedings to Judge White.

Respondent served interrogatories on Investigative Counsel pursuant to the civil discovery rules, specifically Md. Rule 2-421. In response, Investigative Counsel filed a request to strike the discovery demands. Investigative Counsel explained that, although the Rules expressly provide that discovery in judicial disciplinary proceedings shall be governed by civil discovery rules, this "does not mean that every rule in [the civil discovery rules] is relevant, appropriate, or applicable to proceedings before the Commission." Investigative Counsel also contended that Judge White could not serve her with requests for admissions because Investigative Counsel "is neither a party nor a witness . . . ."

---

court officials, and others subject to the judge's direction and control to refrain from similar conduct.

(c) The restrictions of section (b) of this Rule do not preclude judges or attorneys from making legitimate references to the listed factors, or similar factors, when they are relevant to an issue in a proceeding.

Md. Rule 18-102.3.

[17] *See supra* note 7.

15

Investigative Counsel closed her request by asking the Commission to enter a protective order prohibiting Judge White from receiving certain documents prepared by Investigative Counsel. Investigative Counsel claimed that these documents were subject to confidentiality restrictions (*see, e.g.*, Md. Rule 18-409(a)(4)) and amounted to attorney work product.

After a hearing, where both Investigative Counsel and Respondent's attorney appeared, the Commission denied Judge White's motion to dismiss. The Commission opined that it had no power to dismiss the charges under Md. Rule 18-406 until after it held a hearing on the merits under Md. Rule 18-407. The Commission also interpreted the discovery rules to vest complete discovery authority in the Chair of the Commission. Without further explanation, the Commission simply stated that the decision to strike Respondent's interrogatories and request for admissions did not eliminate her access "to a fair discovery process."

The Commission held an evidentiary hearing on July 7 and 8, 2016. Investigative Counsel called no witnesses, but offered five exhibits: (1) the Baltimore City Circuit Court file for *Joyner*; (2) video recordings of the May 5, 2014, October 15, 2014, and October 31, 2014 proceedings before Judge White; (3) a transcript of the October 15, 2014 proceeding; (4) a transcript of the October, 31, 2014 hearing; and (5) a copy of the charges. Investigative Counsel then played recordings of the May 4, October 15, and October 31 proceedings for the Commission.

In addition to her own testimony, Judge White presented five witnesses: (1) Circuit Administrative Judge W. Michel Pierson; (2) Judge in charge of the Civil Docket, Athea

16

M. Handy; (3) retired Judge Carol E. Smith; (4) Jeff Trueman; and (5) Andrew Stephenson. Investigative Counsel thoroughly cross-examined Judge White. Members of the Commission also questioned her.

On August 3, 2016, the Commission, by unanimous vote, publicly reprimanded Judge White. The Commission concluded that Judge White violated the Maryland Code of Judicial Conduct through her "undignified, discourteous, and unprofessional" treatment of Jones and her failure to recuse herself from the show cause hearing after admitting that she could not be impartial.

## DISCUSSION

As we explained in our earlier opinion, while we do not have "*appellate* jurisdiction for review of Judge White's claims, this Court is able to review her allegation that the Commission proceeding denied her procedural due process as a petition for a common law writ of mandamus." *White I*, 451 Md. at 649 (emphasis in original). Our jurisprudence on common law mandamus is well established:

> [C]ommon law mandamus is an extraordinary remedy that is generally used to compel inferior tribunals, public officials or administrative agencies to perform their function, or perform some particular duty imposed upon them which in its nature is imperative and to the performance of which the party applying for the writ has a clear legal right. The writ ordinarily does not lie where the action to be reviewed is discretionary or depends on personal judgment.

*Falls Road Cmty. Ass'n, Inc. v. Baltimore Cty.*, 437 Md. 115, 139 (2014) (cleaned up); "'Mandamus is an original action, as distinguished from an appeal.'" *Goodwich v. Nolan*, 343 Md. 130, 145 (1996) (cleaned up). The Commission's public reprimand of a sitting

17

judge is a unique circumstance, which permits the availability of the ancient writ for our review of a judge's claims of constitutional defects, but not review of a claim that there was no sanctionable conduct. We reiterate our previous holding wherein we explained that the common law writ of mandamus may not be employed to review the merits of the Commission's decision to issue a public reprimand. *White I*, 451 Md. at 651–52. Such a decision is "properly classified as a non-ministerial discretionary act that is dependent upon the judgment of the Commission members[,]" and beyond the scope of mandamus review. *Id.*[18]

---

[18] The Maryland Constitution expressly provides the Commission with the power to issue a reprimand. See Md. Const. art. 4, § 4B(a)(2). The Constitution only calls for this Court to decide a judicial discipline matter if the Commission recommends the removal, censure, or other appropriate discipline of a judge. *Id.* Keeping in mind the Commission's high degree of independence—at least when issuing a public reprimand—we refrain from assessing whether the Commission properly found sanctionable conduct or ordered a public reprimand in this case. Thus, we do not address the applicability of the general rule that recusal is entirely within the discretion of the judge. *See, e.g., Jefferson-El v. State*, 330 Md. 99, 107 (1993) ("The recusal decision . . . is discretionary, and the exercise of that discretion will not be overturned except for abuse.") (citations omitted). *But see Surratt v. Prince George's Cty.*, 320 Md. 439, 466 (1990) ("We hold that when the asserted basis for recusal is personal conduct of the trial judge that generates serious issues about his or her personal misconduct, then the trial judge must permit another judge to decide the motion for recusal.").

This is not "administrative mandamus," which is an extension of common law mandamus, "for judicial review of certain quasi-judicial administrative decisions when judicial review is not otherwise expressly provided by law." *White I*, 454 Md. at 650 n.15; *See also*, *Hughes v. Moyer*, 452 Md. 77, 90–91 (2017) (differentiating administrative mandamus from common law mandamus). But the Commission, as an entity specifically created by the Maryland Constitution, has a unique status. With its complete discretion to issue a public reprimand, the Commission differs from the administrative agencies in cases where this Court has applied the "administrative mandamus" doctrine. *See e.g.*, *Maryland-Nat'l Capital Park and Planning Comm'n v. Rosenberg*, 269 Md. 520, (administrative mandamus appropriate to overturn arbitrary decision of county planning board); *State*

18

As we explained in *White I*, 451 Md. at 651, "the Commission has a duty to provide procedural due process, as set forth in the State Constitution and Maryland Rules, to an accused judge . . . ." The Maryland Constitution "defers to this Court the task of designing a fair process by rule." *Id.* at 647. During the disciplinary process, the Commission is bound by "the fundamental rules of fairness." *Id.* at 647–48. According to the Maryland Constitution and our Rules "an accused judge is entitled to these elements of procedural due process—notice, an opportunity to respond, [and] a fair hearing—regardless of the outcome—*i.e.*, whether the Commission ultimately decides to dismiss the charges, reprimand the judge, or recommend that we censure, discipline, or remove the judge." *Id.* at 648. Minor deviation from the Rules without prejudice to the judge does not undermine this guarantee. *Id.*

Judge White contends that the Commission proceedings lacked fundamental fairness, in several respects, and denied her right to procedural due process. In our Discussion, below, we divide her contentions into two categories: (1) those relating to preliminary matters before the Commission decided to issue charges ("Proceedings Preliminary to Charges"), and (2) those relating to events occurring after public charges were filed against her ("Proceedings After Charges Filed").

Overall, Judge White insists that the Commission's material deviations from the requirements of the Maryland Constitution and the Rules were serious failures that

---

*Dept. of Health v. Walker*, 238 Md. 512 (1965) (administrative mandamus applied to overturn Board of Health's abuse of discretion in denial of a sewage system permit); *Heaps v. Cobb*, 185 Md. 372, 379 (1945) (administrative mandamus invoked to correct arbitrary decision of board of trustees of a city employees' retirement system).

19

deprived her of procedural due process and thus rendered the proceedings fundamentally unfair.

## I.     PROCEEDINGS PRELIMINARY TO CHARGES

### Prompt Notification Of Investigation

Judge White contends that Investigative Counsel failed to promptly notify her of the complaints. Specifically, she asserts that Investigative Counsel waited approximately six months from when Jones filed his first complaint to notify her. Respondent asserts that this delayed notification prejudiced her ability to dispute the allegations before the Inquiry Board, and to raise objections to Investigative Counsel's failure to comply with time standards.

Maryland Rule 18-404(e)(4) requires that Investigative Counsel notify the judge of a complaint before the completion of the preliminary investigation, which is due within 90 days of the complaint filing. It also permits the Inquiry Board to delay giving notice of the investigation to the judge "for good cause shown" by Investigative Counsel. *Id.* Because Jones filed his first complaint on October 20, 2014, the preliminary investigation was due to be completed on January 19, 2015. *Id.* (e)(6). Judge White did not receive notice until three months after that date—on April 17, 2015. In the meantime, though, on January 15, 2015, the Inquiry Board granted a 30-day extension "for good cause shown" as allowed by the same Rule, and a second 60-day extension thereafter. The minutes for the Inquiry

Board meeting, and the Commission's brief, fail to articulate any explanation of the "good cause" the Inquiry Board relied upon to extend the deadline. *See* Md. Rule 18-405(a).[19]

This Court can readily understand Judge White's frustration when she learned that the complaint was filed six months before she was given notice thereof, especially when the "good cause" extension was unclear. Judges, who hold positions of great responsibility and respect, need to be trusted by the public, and are rightfully sensitive about ethics complaints against them. Her frustration may have been compounded when she later learned that Investigative Counsel's disposition recommendation explained that the investigation consisted merely of reviewing: (1) Mr. Jones's complaints; (2) the recordings of the hearings held before Judge White; and (3) Judge White's response.

At oral argument, the Commission explained that there can be extensive delays in obtaining either a recording or transcript from a trial court. This, we think, would be sufficient reason to grant an extension under Md. Rule 18-404(e)(4). On the other hand, Investigative Counsel's volume of work would probably not be sufficient, absent some unusual circumstance. There is nothing in the record to document the reason for the delay in this case. Although there is no requirement in Md. Rules 18-404 or 18-405 that the Commission document the reason for extension, it would be better practice in future cases

---

[19] In permitting delayed notice, the judge **must** receive notice of the charges at least 30 days before Investigative Counsel makes a disposition recommendation to the Inquiry Board, which occurred in this case on May 19, 2015. *See* Md. Rule 18-405(a). Judge White did not receive notice of the complaint or the preliminary investigation until, at the earliest, April 17, 2015 (32 days prior to the disposition recommendation). In her brief before this Court, Judge White asserts that she received notice from Investigative Counsel on April 30, 2015, clearly less than required. We do not resolve this dispute as to the timing of notice.

to do so—thus, perhaps, avoiding a future challenge of this nature. To resolve this case, we assume that the delay was without due cause, and move on to consider the consequences of this Rule violation.

Judge White contends that the delay affected her due process rights because it prejudiced her ability to defend herself even at the very early stages in the disciplinary process. We are not persuaded this is so. As we recognized in *White I*, 451 Md. at 648, "an accused judge is entitled to . . . notice, an opportunity to respond, [and] a fair hearing . . . ." But deviation from the Rules without infringing on these rights would not undermine this guarantee. *Id.*

Other jurisdictions have held that due process considerations do not require a judge to receive notice of a preliminary investigation before a determination of probable cause. *See Ryan v. Comm'n on Judicial Performance*, 754 P.2d 724, 729 (Cal. 1988), *modified on denial of reh'g* (June 30, 1988) (judge's due process claim rejected because, "[s]imply stated, a judge does not have the right to defend against a proceeding that has not yet been brought"); *In re Flanagan*, 690 A.2d 865, 874–76 (Conn. 1997) ("[T]he due process protections afforded in disciplinary proceedings . . . are inapplicable unless and until the review council brings formal charges . . . ."); *In re Graziano*, 696 So. 2d 744, 752–53 (Fla. 1997);[20] *In re Karasov*, 805 N.W.2d 255, 273–74 (Minn. 2011) ("[D]ue process does not require notice of a judicial discipline investigation.").

---

[20] *In re Graziano*, 696 So. 2d 744, 752–53 (Fla. 1997), involved a judge who claimed that her due process rights were violated when the disciplinary authority failed to give her notice of an investigation. Specifically, the judge argued that she was prohibited from

This rule applies to the judicial discipline process in Maryland as well. In terms of due process, Judge White had sufficient opportunity, even before the filing of public charges, to defend against the misconduct allegations made by Jones, and she took advantage of that opportunity, filing extensive written objections with the Commission before public charges, and afterwards, a motion to dismiss the charges, with a hearing thereon, as well as a full-fledged defense on the merits. Further, Respondent does not offer any explanation of what she would have done during those 90 days ending with April 17, 2015, to enhance her defense against the charges. We can see no due process violation.[21]

## Investigative Counsel's Communications With The Inquiry Board And The Commission

Judge White objects to several instances of so-called "*ex parte*" communications between Investigative Counsel and the Inquiry Board or Commission. The Inquiry Board discussed Respondent's case with Investigative Counsel, but without Respondent's counsel, at its meetings in 2015. Investigative Counsel advised the Inquiry Board of her conversations with Respondent's attorneys, yet Respondent's attorneys were not present during these meetings. After the Inquiry Board issued its report to the Commission,

---

presenting witnesses before the disciplinary authority found probable cause to issue charges against her. The court rejected this claim, relying on the principle that "due process is met when one is given notice of proceedings and an opportunity to be heard, and proceedings are essentially fair." *Id*.

[21] Notably, Md. Rule 18-404(6) accords to the Commission the discretion as to the remedy for Investigative Counsel's failure to comply with the time limits for completing the preliminary investigation. *See id.* ("For failure to comply with the time requirements of this section, the Commission may dismiss any complaint and terminate the investigation."). In this mandamus action, we do not review the Commission's decision for an abuse of discretion.

Investigative Counsel was present when Respondent's case was discussed at the Commission meetings. Again, Judge White's attorney did not attend these meetings. Respondent contends that Investigative Counsel's communications with the Inquiry Board and Commission resulted in prejudice to her because she had no way of knowing that her submissions to the Inquiry Board and Commission were presented accurately and she could not refute any assertions made by Investigative Counsel.

As the Commission argues, the Rules plainly contemplate ongoing communications and coordinated activity between Investigative Counsel, the Inquiry Board, and the Commission. Specifically, the Rules permit Investigative Counsel to take several actions without notice to the judge. Investigative Counsel must "inform the Board or Commission that the preliminary investigation is being undertaken." Md. Rule 18-404(e)(1). Investigative Counsel can also apply to the Inquiry Board for an extension of the time for completing the preliminary investigation and must report the results of the preliminary investigation to the Inquiry Board. *Id.* (e)(6), (f). Investigative Counsel must also "report and make recommendations to the Commission as directed by the Commission." Md. Rule 18-402(d). Indeed, the Maryland Constitution authorizes the Commission to investigate, as well as hear charges. *See* Md. Const. art. 4, § 4B(a).

We have previously examined the unique role of the Commission. In *In re Diener*, 268 Md. 659, 677 (1973), we considered two judges' contentions that they were denied a fair process "because the Commission acted as investigator, prosecutor, judge and jury in . . . [a judicial discipline] proceeding." We ultimately recognized that judges are not denied a fair and impartial process merely because the Commission operates as both

24

investigator (through Investigative Counsel) and decision-maker in judicial discipline cases. *Id.* at 678–79.

*Diener*'s recognition that a quasi-judicial body may determine probable cause and continue to adjudicate the matter, without creating impermissible bias or prejudice, is consistent with Supreme Court precedent as well as other cases from this Court. *See, e.g.*, *Withrow v. Larkin*, 421 U.S. 35, 52–58 (1975) ("It is also very typical for the members of administrative agencies to receive the results of investigations, to approve the filing of charges or formal complaints instituting enforcement proceedings and then to participate in the ensuing hearings. This mode of procedure . . . does not violate due process of law.");[22] *Public Serv. Comm'n v. Wilson*, 389 Md. 27, 92 (2005) ("We are unwilling to assume the apparent premise of . . . [the] argument that some kind of blind pride of authorship or hubris of power renders an administrative decision-maker *ipso facto* unable to assess fairly and objectively arguments that his or her decision should be revisited, changed, or abandoned."); *see also Mississippi Comm'n on Judicial Performance v. Russell*, 691 So. 2d 929, 946 (Miss. 1997) (bifurcated judicial disciplinary process presented "no more evidence of bias or the risk of bias . . . than inheres in the very fact that the Board had investigated and would now adjudicate."). Indeed, Judge White cites no authority holding to the contrary.

---

[22] We have previously recognized that due process provisions in the Maryland and Federal Constitutions have the same meaning and therefore, Supreme Court decisions interpreting due process claims function as authority for determining Maryland's due process requirements. *See, e.g.*, *Pitsenberger v. Pitsenberger*, 287 Md. 20, 27 (1980).

By modifying our Rules of Procedure, we have taken steps intended to reduce the potential that the Commission would learn of unfairly prejudicial information in its role as investigator. At the Commission's request in 2007, we created the Inquiry Board—which would monitor investigations by Investigative Counsel, and submit a report and recommendation to the Commission that filtered out any inadmissible evidence regarding a pending case. *See* Md. Rule 18-404(j)(2) ("The information transmitted by the Board to the Commission **shall be limited** to a proffer of evidence that the Board has determined would be likely to be admitted at a plenary hearing.") (emphasis added); *see also* Standing Comm. on Rules of Practice and Procedure, *157th Report*, 239 (2006); *157th Report of the Standing Comm. on Rules of Practice and Procedure: Hearing*, Court of Appeals of Maryland (2007) (testimony of Sally D. Adkins, former Chair of the Comm'n on Judicial Disabilities). We did not, however, undertake to insulate the Commission entirely from its constitutionally authorized power to investigate, conduct hearings, and issue reprimands. *See* Md. Const. art. 4, § 4B. We always bear in mind, that, absent violation of a Federal constitutional right, we are constrained by the Maryland Constitution and the General Assembly's legislative mandates. *White I*, 451 Md. at 634–37, 646–47; *In re Diener*, 268 Md. at 688–89. The Commission was accorded the authority and obligation to investigate, initiate prosecutions, and make decisions. Md. Const. art. IV, § 4B(a)(1)–(2). To override a decision on the merits of a complaint by the Commission because it also made

preliminary decisions in its oversight of Investigative Counsel would, we think, run afoul of the Maryland Constitution and the General Assembly's legislative intent.[23]

Our own precedent also constrains us. We rejected an argument similar to Judge White's in *Diener.* 268 Md. at 679 ("It is well settled that a combination of investigative and judicial functions within an agency does not violate due process." (cleaned up)). Before any finding of sanctionable conduct or discipline, Judge White appeared and presented her defenses—both at the hearing on her motion to dismiss and at the evidentiary hearing. We conclude that her lack of any personal appearance before the Commission,

---

[23] We also conclude that the Commission's oversight of Investigative Counsel does not offend the requirement, in administrative law, that agencies maintain "ethics walls" dividing adjudication processes from an agency's investigatory processes. *See* Jeff Bush & Kristal Wiitala Knutson, *The Building and Maintenance of "Ethics Walls" in Administrative Adjudicatory Proceedings*, 24 J. Nat'l Ass'n Admin. L. Judges 1, 15–18 (2004) (explaining best practices for administrative agencies when separating adjudicatory and investigatory functions of an agency).

> Regardless of the hearing official's employment or fiscal relationship with a party agency, the hearing official should exercise independence of action, decision, and judgment to protect the due process rights of parties and achieve a legally correct result in a case. The hearing official's maintenance of decisional independence from agency management and programs is crucial.

*Id.* at 15. The Commission's preliminary communications with Investigative Counsel do not prevent the Commission from rendering a fair and impartial judgment after a hearing on the merits of the Commission's charges. Furthermore, the Commission is not beholden to Investigative Counsel's recommendations because the Commission, and not a superior agency head with authority over the Commission, appoints Investigative Counsel. *Id.* at 2–6.

27

prior to her charging, did not violate the Rules and did not prevent her from being accorded a fair proceeding.

Respondent made a request to appear before the Commission, but her request was denied.[24] Md. Rule 18-404(l) (Commission **may** authorize a judge, upon a written request to "appear before the Commission on terms and conditions established by the Commission."). Nevertheless, she was given an opportunity to present written objections to the Inquiry Board's report. She did so and the Commission reviewed her objections. Her correspondence with Investigative Counsel was always forwarded to the Inquiry Board or the Commission for review. Most vitally, Judge White was afforded an opportunity, as required by the Rules, to appear before the Commission **after** the issuance of charges. Md. Rule 18-407(f).

## Disclosure Of Inquiry Board Report

The Inquiry Board did not fully comply with the directions in the 2007 Rules concerning the Inquiry Board, and Judge White claims foul play. She points to the failure to promptly send her a copy of the Inquiry Board's report regarding her case. *See* Md. Rule 18-404(j)(4). Respondent views the delay as prejudicial—claiming that it prevented her from filing objections with the Commission to contest the Inquiry Board's recommendation of a finding that she committed sanctionable conduct and that she receive a reprimand.

---

[24] There is no record that Respondent or her attorneys requested an informal meeting with the Inquiry Board, and Judge White does not argue that she did. *See* Md. Rule 18-404(i) ("The [Inquiry] Board may meet informally with the judge for the purpose of discussing an appropriate disposition.").

The Rules require the Commission to **promptly** transmit a copy of the Inquiry Board's report to both Investigative Counsel and the respondent judge. *Id.* The judge and Investigative Counsel then have the opportunity to file objections with the Commission. *Id.* (k). After reviewing the Inquiry Board's report and any timely objections, the Commission can then proceed by dismissal, private reprimand or deferred discipline,[25] or by filing public charges. *See* Md. Rules 18-406; 18-407(a).

The Inquiry Board submitted its report to the Commission on December 11, 2015, but no copy was sent to Judge White. The report was not sent to Respondent until January 12, 21 days later, after she requested the report upon being notified that charges would be filed. This was a clear violation of the Rule—Judge White should have been given a chance to file objections to the Inquiry Board's report *prior to* the Commission's finding of probable cause. Md. Rule 18-404(k)–(l). Upon learning of the mistake, the Commission agreed to reconsider the matter after Respondent filed a written response to the report, although it denied her a personal appearance. Respondent then filed extensive objections, which the Commission reviewed before it proceeded to file public charges. A special meeting was called on March 2, 2016 for the Commission to reconsider the case in light of Respondent's objections. It did so, with Investigative Counsel, but not Judge White or her attorney present (other than through the papers they filed), and the Commission voted again to find probable cause and proceed with public charges.

---

[25] Both a warning, a private reprimand, and a "deferred disciplinary agreement" can be rejected by the judge, in which case, the Commission must choose to proceed with public charges under Md. Rule 18-407 or dismiss the matter.

Yet another aspect of this dispute is that when the Commission sent Judge White the Inquiry Board's report, it declined to send Investigative Counsel's May 19, 2015 memorandum, which was an attachment thereto. Judge White challenged that, when filing this mandamus action, she still had not seen that memorandum. The Commission maintained that the memorandum was attorney work product and therefore confidential. The attorney work product doctrine protects from disclosure "the work of an attorney done in anticipation of litigation or in readiness for trial." *E.I. du Pont de Nemours & Co. v. Forma-Pack, Inc.*, 351 Md. 396, 407 (1998). "When confronted with the work product doctrine, courts must balance the need for efficient litigation through liberal disclosure against the attorney's responsibility to be a zealous and protective advocate . . . ." *Id.* An attorney's "strategies, theories, and mental impressions" are attorney work product. *Storetrax.com, Inc. v. Gurland*, 168 Md. App. 50, 93 (2006), *aff'd*, 397 Md. 37 (2007).

Based on the Commission's assertion of privileged work product, we decided to conduct an *in camera* inspection of Investigative Counsel's memorandum. Order, *Matter of White*, Misc. No. 5, Sept. 2016 Term (Md. Ct. App. June 2, 2017). Upon that examination we found no confidential information regarding the complaints against Judge White or Investigative Counsel's "strategies, theories, and mental impressions." Accordingly, Investigative Counsel had no reason to withhold the memorandum because it was not subject to attorney work product protection. *See Forma-Pack*, 351 Md. at 407; *Gurland*, 168 Md. App. at 93.

Although we sympathize with Judge White's vexation regarding Investigative Counsel's repeated rejections of her request to review the memorandum, we struggle to

understand how disclosure of the memorandum, or earlier transmission of the Inquiry Board report would have bolstered her ability to defend against the complaints.

In an attorney discipline case from the Supreme Court of Vermont, a review board (operating like the Commission), adopted one version of a preliminary discipline recommendation, and then a second version, without allowing the respondent attorney an opportunity, guaranteed by the Vermont rules, to respond to the second version. *In re Illuzzi*, 616 A.2d 233, 234 (Vt. 1992) (per curiam). There, the court concluded that the respondent attorney was entitled to a rehearing on the second version of the recommendation. *Id.* at 235. The court reasoned that these circumstances denied the attorney an opportunity to address the issues raised in the subsequent report. *Id.* But here, the Commission had already revisited the issue of probable cause **after** Judge White had an opportunity to respond to the Inquiry Board's report.

Judge White provides no authority for her position that the Commission's improper delay in forwarding of the Inquiry Board's report violated her right to a fair proceeding. Her only argument is that the delayed transmission impaired her ability to adequately respond to the Inquiry Board's conclusions in the report. This assertion ignores the fact that, after prematurely determining the issue of probable cause, the Commission reconsidered her case after reviewing her objections and still found probable cause. This is not a violation of due process. *See Wilson*, 389 Md. at 92. Without a due process violation in this mandamus action, we have no jurisdiction to second-guess the validity of the Commission's reconsideration of the probable cause question in light of the objections and memorandum filed by Judge White's counsel.

31

## II.    PROCEEDINGS AFTER CHARGES FILED

The second category of Judge White's complaints relates to events occurring after public charges were filed against her.

### Discovery

Judge White contends that the Commission improperly limited the scope of discovery before her evidentiary hearing, thus prejudicing her ability to provide a defense. Specifically, Respondent objects to the Commission's striking the interrogatories and request for admissions she served upon Investigative Counsel.

Maryland Rule 18-407(g)(3) provides that the discovery rules for civil actions in the circuit courts shall apply to proceedings before the Commission. That same Rule also states that the "Chair of the Commission, rather than the court, may limit the scope of discovery, enter protective orders permitted by Rule 2-403, and resolve other discovery issues." *Id.* In addition to the civil discovery methods mentioned by this Rule, Md. Rule 18-407(f) also allows the Judge to inspect and copy the Commission record and to subpoena witnesses and the production of documents or other tangible evidence.

Judge White embraced her right to inspect and copy the Commission record as provided by Md. Rule 18-407(f). In addition, Investigative Counsel furnished her, belatedly, with a copy of the Inquiry Board's report. Wanting still more information to mount a defense of the charges against her, Judge White served Investigative Counsel with interrogatories and a request for admissions. Most of Respondent's interrogatories requested that Investigative Counsel provide further explanation of Judge White's

"sanctionable conduct." Respondent also requested the identification of any facts or evidence reported by Investigative Counsel to the Inquiry Board or the Commission.

Investigative Counsel proffered several reasons why the Chair of the Commission should strike Judge White's discovery requests. First, Investigative Counsel argued that the civil discovery rules provided in Rule 2-401 *et seq.* only apply to a "party," and she was not a "party," but merely an "attorney appointed by the Commission." She also contended that the interrogatories requested her work product, presumably the May 19, 2015 memorandum.

The Commission agreed with Investigative Counsel and struck Judge White's discovery requests. Specifically, the Chair agreed that Investigative Counsel should not be considered a "party" for purposes of applying the civil discovery rules in a judicial discipline case. Before this Court, the Commission continues to assert that the Chair properly limited the scope of discovery as permitted by Md. Rule 18-407(g)(3).

The Commission is wrong—discovery cannot be refused on the grounds that Investigative Counsel is not a party.[26] If the Chair could entirely prohibit a respondent judge's use of civil discovery because Investigative Counsel is not a "party," Md. Rule 18-407(g)(3) would be meaningless. Moreover, such interpretation would also, to be consistent, preclude discovery sought by Investigative Counsel, which is not a result we intended. We decline such interpretation of the Rule.

---

[26] The civil discovery rules are to be utilized by one "party" to request information from another "party." *See* Md. Rules 2-411 (depositions); 2-421(a) (interrogatories); 2-422(a) (requests for production of documents); 2-424(a) (requests for admissions).

33

The procedures in attorney grievance cases are analogous. In attorney grievance cases, Md. Rule 19-726[27]—governing discovery—like Md. Rule 18-407(g)(3), also provides for application of the civil discovery rules. There, interrogatories and requests for admissions are frequently issued and answered by both Bar Counsel and respondent attorneys. *See, e.g.*, *Attorney Grievance Comm'n v. Frost*, 437 Md. 245, 260–61 (2014). Although Investigative Counsel is an agent of the Commission, she serves nearly the same function as Bar Counsel in attorney grievance cases. *Compare* Md. Rules 18-404–407 (powers and responsibilities of Investigative Counsel), *with* Md. Rule 19-703(b) (powers and responsibilities of Bar Counsel). We conclude that for purposes of the discovery rules, Investigative Counsel is a "party" to judicial discipline cases and the civil discovery rules apply accordingly. Thus, the Commission improperly struck Judge White's interrogatories and request for admissions.

Judge White relies on *Sapero v. Mayor & City Council of Baltimore*, 398 Md. 317, 345–46 (2007), to assert that a complete refusal of discovery results in a violation of due process. In *Sapero*, this Court vacated a quick-take condemnation procedure giving an individual only ten days after being served with a petition for immediate taking of possession and title to file an answer challenging the City's right to condemn, and requiring that a hearing on the merits occur within 15 days thereafter. *Id.* at 322. This meant that discovery was virtually impossible, and time to prepare for litigation "drastically

---

[27] Md. Rule 19-726 provides: "After a Petition for Disciplinary or Remedial Action has been filed, **discovery is governed by Title 2, Chapter 400**, subject to any scheduling order entered pursuant to Rule 19-722." (Emphasis added).

shortened." *Id*. at 345.[28] We held that this shortened procedure, allowing no discovery by the property owner, violated due process because "the timing under which quick-take condemnation takes place . . . severely and prohibitively restricts a party's ability to prepare for the hearing to challenge the quick-take condemnation." *Id.* at 346. The Court explained, comparing the quick-take procedure with regular condemnation proceedings:

> These quick-take condemnations deal with the fundamental right to property, and any resulting deprivation of process— that which is normally provided under regular condemnation proceedings—should not occur unless warranted by extreme circumstances. Such extreme circumstances can arise when there is an immediate threat to the public health, safety, and welfare, or possibly in extreme cases of "hold-outs[.]"

*Id.* at 347 (citations omitted).

In evaluating the proceedings before the Commission involving Judge White, we recall that

> [t]he fundamental objective of discovery is to advance the sound and expeditious administration of justice by eliminating, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation.

*Rodriguez v. Clarke*, 400 Md. 39, 57 (2007) (cleaned up).

But unlike the parties denied discovery in *Sapero* and *Rodriquez*, Judge White had a full opportunity for discovery—despite the Chair's discovery ruling. The Rules already require Investigative Counsel to provide open-file discovery to the respondent judge. *See* Md. Rule 18-407(g)(1) ("Upon request of the judge at any time after service of charges

---

[28] The City refused discovery in full. *Sapero v. Mayor & City Council of Baltimore*, 398 Md. 317, 345–46 (2007).

upon the judge, Investigative Counsel shall promptly (A) allow the judge to inspect the Commission Record and to copy all evidence accumulated during the investigation . . . ."). Judge White had notice of the charges against her and was informed of the conduct the Commission reviewed when deciding to issue charges. The Commission's record, which she reviewed, indicated that Investigative Counsel intended to rely exclusively upon the video recordings and transcripts of Judge White's behavior at the *Joyner* hearings—and that is exactly what occurred. Although Respondent claims that she went into her evidentiary hearing "confused and muddled" as to the facts giving rise to her charges, the record reveals the contrary. Her detailed arguments in response to the Inquiry Board's report to the Commission, in her motion to dismiss, and her defenses to the charges, all indicate that she perfectly understood the nature of the allegations against her.[29]

---

[29] Judge White also tries to make hay with an indeterminate argument that a so-called "third complaint" filed by Mr. Jones that was not the subject of these charges somehow tainted the Commission's decision because it accused her of racial discrimination. Mr. Jones's complaint, which incorporated by reference his first two complaints, challenges the Commission's non-action, which he said, "force[s] me (before the end of this month if nothing is done by the Commission) to consider federal court and/or E[qual] E[mployment] O[pportunity] C[omission] involvement." He used the term "prejudice" repeatedly, but seemed to refer to Judge White's own acknowledgment that she was biased because she found him fully incredulous. The only hint in his complaint that he thought her bias was racial was his threat to complain to the EEOC. We do not see how this third complaint possibly could have prejudiced the Commission. First, Investigative Counsel took no action on the third complaint, and there was no suggestion in the charges or at the evidentiary hearing that Respondent was racially biased. We do not even know if the Commission members saw the document. Second, the third complaint was merely a reiteration of his first two complaints, neither of which alleged racial discrimination. The mere mention of the EEOC by Mr. Jones would create no prejudice and provides no basis for relief for Judge White in this mandamus action.

Because the evidence adduced against her consisted strictly of transcripts of hearings and Jones's complaints that were disclosed to her well before the hearing, although the Commission improperly struck Judge White's discovery requests, we conclude that this mistake did not result in in a fundamentally unfair hearing—because it resulted in no prejudice to her. An appropriate discovery response would only have identified these transcripts and complaints and perhaps reproduced them for her attorneys.[30] Investigative Counsel had already sent to Judge White's counsel copies of the complaints and recordings of each of the disputed hearings on April 17, 2015.

### The Commission Hearing

Judge White has several complaints about the evidentiary hearing before the Commission. First, she contends that the Commission violated her due process rights by preventing her from offering relevant evidence, in the form of witness testimony. Specifically, she objects to the Commission's decision to limit her examinations of her witnesses to only ten minutes each. Respondent contends that the witnesses would have presented valuable "mitigation evidence" relevant to the charged misconduct and her decision not to recuse herself from the show cause proceedings involving Jones. She asserts that the excluded evidence would have detailed the circumstances giving rise to the contempt finding against Jones and explained the proper functioning and importance of the ADR system.

---

[30] The Commission Chair may have discerned that requiring Investigative Counsel to answer interrogatories or produce further documents would be futile in light of the nature of the charges and White's counsel's having already reviewed the Commission file.

The Commission limited Judge White's presentation of witnesses. Investigative Counsel argued that the proffered testimony—regarding the Circuit Court's ADR program and Jones's interactions with opposing counsel—was irrelevant to determining whether Judge White committed sanctionable misconduct. Without explaining the reasoning for its ruling, the Commission limited the testimony of Judge Pierson, Judge Smith, and Judge Handy to ten minutes each. The Commission further limited the testimony of Mr. Stephenson and Mr. Trueman to matters related to the pretrial settlement conference.

Administrative or quasi-administrative agencies, such as the Commission, "must observe the basic rules of fairness as to parties appearing before them so as to comport with the requirements of procedural due process . . . ." *Travers v. Baltimore Police Dep't*, 115 Md. App. 395, 411 (1997); *see also Schultz v. Pritts*, 291 Md. 1, 7 (1981). Evidentiary rulings can violate a party's due process rights when, for example, the administrative body considers additional evidence after the close of the hearing and without providing an opportunity for cross-examination or rebuttal. *Maryland State Police v. Zeigler*, 330 Md. 540, 557 (1993). Otherwise, evidentiary rulings are traditionally within the discretion of the administrative body, and we will only find error when such a ruling offends basic rules of fairness. *See*, *e.g.*, *Travers*, 115 Md. App. at 413–17.

We see no violation of due process here. The Commission charged Judge White with misconduct for allegedly treating Jones in an unprofessional manner and failing to recuse herself from his show cause proceedings after stating her bias against him. Although the proffered testimony of Judge White's witnesses might have been relevant for mitigation—to explain why Judge White was justifiably perturbed with Mr. Jones, they

38

were not relevant to the charges of misconduct. A judge cannot justify unprofessional treatment of a litigant on the judge's personal misgivings with that litigant.[31] Judge White seems to agree that the testimony of these witnesses related only to mitigation.

Although the testimony was limited in time, her witnesses still managed to testify extensively regarding Judge White's good character and her role as supervisor of the ADR program. Before this Court, Judge White has offered no example of any further evidence that these witnesses could have offered if allowed to testify beyond the limitations imposed by the Commission. We see no violation of due process on this record. *See Zeigler*, 330 Md. at 559–60. Investigative Counsel's case consisted merely of the recordings and transcripts of the hearings in *Joyner*, and Jones's complaints. Allowing Judge White to present several character witnesses, and unfettered testimony of her own, complied with the basic principles of fairness and did not violate her due process rights.

### MCJC 1.2 Violation

Judge White finally argues that the Commission sanctioned her for conduct beyond the scope of the charges when it determined there were violations of MCJC 1.2 ("Promoting Confidence in the Judiciary")[32] relating to the May 5, 2014 hearing. This contention is belied by the record.

---

[31] Difficult litigants test the mettle of any trial judge. But we would indeed be stepping onto a slippery slope if we held that judges could violate professional rules in response to rule-breaking or other misconduct by litigants who appear before them. Md. Rule 18-101.2(a) requires that, "[a] judge shall act **at all times** in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary." (emphasis added).

[32] Md. Rule 18-101.2(a).

The charges include the following language:

> The investigation specifically revealed the following facts upon which the charges are based: Judge White presided over certain hearings in [the *Joyner* case] in which Rev. Jones represented the plaintiff. At issue in this investigation was Judge White's conduct during the May 5, 2014, October 15, 2014[,] and October 31, 2014 hearings.

The charges alleged that she violated MCJC 1.2, and closed by stating that "Judge White's behavior provides evidence that Judge White engaged in conduct that was prejudicial to the proper administration of justice in Maryland Courts . . . ." Ultimately, the Commission concluded that Judge White's "treatment of Rev. Jones at the May 5, 2014, and October 15, 2014 [hearings], is proof of, and constitutes a violation of [MCJC 1.2]."

Certainly, judges facing disciplinary proceedings are entitled to notice of the charges against them. *Cf. Attorney Grievance Comm'n v. Seiden*, 373 Md. 409, 416–21 (2003). A judge's due process rights are violated, for example, when discipline is based on a rule violation that was not charged. *Id.*; *see also In re Ruffalo*, 390 U.S. 544, 550–51 (1968) (attorney discipline charges "must be known before the proceedings commence. . . . [and] become a trap when, after they are underway, the charges are amended on the basis of testimony of the accused.").

Here though, Judge White was charged with violating MCJC 1.2, and her conduct at the hearings on May 5, 2014 was identified as a basis for the charges. Unlike the respondents in *Seiden* and *Ruffalo*, who were not charged with the rule violations they were ultimately found to have committed, Judge White knew that her conduct at this hearing was part of the complaint and would be considered by the Commission. She had notice of

40

the charged misconduct attributed to her behavior at the May 5, 2014 hearing and the Commission's sanction did not exceed the charges.

## CONCLUSION

"An accused judge is entitled to a fair proceeding, but not necessarily a perfect proceeding." *White I*, 451 Md. at 648. As we have detailed, the proceeding before the Commission certainly was not perfect—several mistakes were made. But in this mandamus proceeding, we look only to whether Judge White received the fundamental due process protections under the Maryland Constitution and our Rules, namely "notice, an opportunity to respond, [and] a fair hearing . . . ." *Id.* Our careful scrutiny of the record convinces us that she did.

**PETITION FOR WRIT OF MANDAMUS DENIED. JUDGMENT ENTERED IN FAVOR OF THE MARYLAND COMMISSION ON JUDICIAL DISABILITIES. COSTS TO BE PAID BY JUDGE PAMELA J. WHITE.**